**Ronald FOX, Petitioner–Appellant,**

v.

**Louis MANN, Superintendent, Shawangunk Correctional Facility, and Robert Abrams, Attorney General of New York, Respondents–Appellees.**

No. 1714, Docket 94–2619.

United States Court of Appeals, Second Circuit.

Argued July 18, 1995.

Decided Nov. 30, 1995.

Mitchell J. Briskey, New York City (Philip L. Weinstein, Legal Aid Society, New York City, on the brief), for Appellant.

Gina M. Mignola, Ass't Dist. Att'y, New York City (Robert M. Morgenthau, Dist. Att'y, Norman Barclay, Ass't Dist. Att'y, Paul Harnisch, Ass't Dist. Att'y, New York City, on the brief), for Appellees.

Before: WINTER, CALABRESI, CABRANES, Circuit Judges.

CALABRESI, Circuit Judge:

Traditionally, criminal cases have involved at most only very narrow discovery. In the past few decades, however, there has been a distinct expansion of criminal discovery. The Supreme Court has stated that such criminal discovery, though still far narrower than that which occurs in civil cases, "increas[es] the evidence available to both parties, enhances the fairness of the adversary system," and is in most respects "salutary." *Wardius v. Oregon,* 412 U.S. 470, 474, 93 S.Ct. 2208, 2211, 37 L.Ed.2d 82 (1973). The Court has empha-

sized, however, that "in the absence of a strong showing of state interests to the contrary, [criminal] discovery must be a two-way street." *Id.* at 475, 93 S.Ct. at 2212.

This *habeas* petition requires us to examine an alleged disruption in the flow of traffic along that two-way street. Appellant Ronald Fox, who was convicted of second-degree murder and criminal possession of a weapon after a trial in New York, claims that the prosecutor in his case violated reciprocal discovery duties established under New York law by presenting at trial the testimony of alibi rebuttal witnesses whom the prosecutor had not identified prior to the trial. This transgression, Fox contends, is serious enough to violate the requirements of due process. Because we conclude that the prosecutors' failure to give pretrial notice of its rebuttal witnesses, in the circumstances of this case, did not violate due process, and because Fox's remaining arguments are meritless, we affirm the order of the district court (Duffy, J.) denying Fox's petition.

## I. BACKGROUND

A little after 2:30 A.M. on April 9, 1981, two New York City police officers saw a red Mercedes–Benz perform an illegal driving maneuver on Riverside Drive in the vicinity of West 164th Street in New York City. When the officers pulled the Mercedes over at West 165th Street, defendant Ronald Fox emerged from behind the driver's seat and nervously approached the police car. As Fox spoke to one officer, the other walked around to the passenger side of the Mercedes. There, he observed that the passenger's window had been shattered and that the front seat was covered with broken glass and large amounts of blood. Asked to explain, Fox responded that the car had been broken into earlier in the evening, and that the malefactor had probably cut his hand in the process. Examining the car further, the officers found a gun on the floor of the passenger's side. The officers then detained Fox. While doing so, one of the officers noticed blood stains on Fox's jacket and hands.

A few minutes later, Manlike Brown, an alleged heroin dealer and an acquaintance of Fox, was discovered lying in the street at the corner of Payson Street and Riverside Drive. He was surrounded by broken glass, and blood poured from a gunshot wound to his head. Although Brown was alive when the police found him, he died shortly thereafter.

Fox was charged with Brown's murder and was brought to trial in late January 1982. At trial, the state introduced evidence that the blood found in Fox's car matched Brown's, that the glass surrounding Brown's fallen body on the street corner was compatible with the glass found in Fox's car, and that the gun retrieved from the car had one spent shell. The gun had only recently been fired at the time it was seized. The state also put forward evidence to show that the bullet that killed Brown was fired at close range, that it entered his skull near the left ear, and that it exited near the right eye. This path was consistent with the government's theory that Fox had shot Brown while the two were seated in Fox's Mercedes—Fox in the driver's seat and Brown on the passenger's side.

Fox did not testify in his own defense, but through cross-examination and the testimony of other witnesses, he challenged much of the state's evidence. Fox also offered the testimony of two alibi witnesses, Ophelia Phelps and Roslyn Jones. Both Phelps and Jones testified that they had been with Fox on the night of the murder and that they had seen Fox lend his car keys to two men, one of whom, according to Phelps, was carrying "a real huge gun." They further testified that when Fox recovered his car a little after 2:00 A.M. outside a bar at the corner of 148th Street and Broadway, they noticed that the front passenger window was broken and had a jagged hole in it.

In rebuttal, the state offered the testimony of Detective Robert Chapman, who had interviewed Jones several weeks before the trial, and Detective Ronnie Hicks, who had met with Phelps. The two detectives described several inconsistencies between the trial testimony of Jones and Phelps and the accounts that Jones and Phelps had given in their pretrial interviews. Specifically, Detective Chapman testified that Jones had not mentioned seeing any hole in the window, but had only described the window as "cracked in

a frosted-like manner." In addition, according to Detective Chapman, Jones had described the location of the car differently before trial, and she had also described only one man, not two, as being present when Fox allegedly turned over the keys to his car. Detective Hicks, in turn, testified that Phelps had not claimed to have seen the broken window, but had merely said that Fox had become angry "as if" the window was broken.

Although Fox did not take the stand, neither did he sit silently throughout the trial. At several points during the proceedings, Fox interjected comments from the defense table. These were loud enough to be heard throughout the courtroom. The trial judge repeatedly admonished Fox to remain quiet, and Fox repeatedly flouted the court's directive. Finally, after Fox interrupted the cross-examination of Detective Hicks, the prosecutor, apparently exasperated, stated, "Your Honor, I am requesting, if the defendant wants to speak, he can take the stand." Fox's counsel immediately moved for a mistrial, but his motion was denied by the trial court. Shortly thereafter, the trial was recessed for the day. The following morning, before testimony resumed, the trial court instructed the jury as follows:

> At the very end of the day yesterday, a most unfortunate remark was made. It's hot in this courtroom, tempers were flared, we are all cramped and uncomfortable, but it should not have been made.
> It was a comment made by the Assistant District Attorney about the defendant taking the stand.
> Now, as I told you, and I repeat, under our system of law, a defendant is not obligated to take the witness stand or call any witnesses or explain his actions in anyway [sic], and you may not draw any inference unfavorable to the defendant from the fact that he does not take the witness stand if he chooses not to.
> The remark should not have been made. He has absolutely no obligation to take the stand. You must strike it from your minds absolutely and positively.
> I have reproved the District Attorney for making it. It will not happen again. Forget it. Okay. Let's forget it.

The jury convicted Fox of second-degree murder and third-degree criminal possession of a weapon. In May 1982, the court sentenced Fox to an indeterminate sentence of fifteen years to life imprisonment on the murder count, with a concurrent sentence of three-and-one-half to seven years on the weapons count.

In January 1990, Fox brought an action in state court for collateral relief from his conviction. After the trial court rejected Fox's bid, he appealed, and this appeal was consolidated with Fox's direct appeal from his conviction, which somehow had not yet been resolved, despite the passage of nearly eight years. The Appellate Division affirmed the conviction in all respects. Fox then filed the present *habeas* petition in the United States District Court for the Southern District of New York, claiming, *inter alia*, that his right to due process was violated by the state's failure to give advance notice of its rebuttal witnesses, by the trial court's instructions to the jury on the burden of proof, and by the prosecutor's suggestion that he should take the stand. On August 24, 1994, the district court denied Fox's petition. This appeal followed.

## II. DISCUSSION

### A. *Failure to Give Notice of Rebuttal Witnesses*

■ Fox's principal complaint is that the state violated his due process rights by failing to give reciprocal notice of its alibi rebuttal witnesses prior to trial and prior to Fox's presentation of his alibi. Under New York law, a criminal defendant is required to give the prosecution notice, within eight days of a demand by the prosecution, of any alibi that he intends to present at trial and the names and addresses of any witnesses that he intends to call in support of that alibi. N.Y.Crim.Proc.Law § 250.20(1) (McKinney 1993).

■ When a state statute imposes a notice-of-alibi requirement on criminal defendants, due process requires, in the absence of a strong countervailing state interest, that the state bear a reciprocal obligation to iden-

tify, before trial, any witnesses that it plans to call to rebut the defendant's alibi. *Wardius v. Oregon,* 412 U.S. 470, 475, 93 S.Ct. 2208, 2212, 37 L.Ed.2d 82 (1973). Accordingly, New York's statute provides that once the state has received the defendant's notice, the state must, no later than ten days before the trial, identify to the defendant any witness that it intends to present in order to discredit the alibi. N.Y.Crim.Proc. Law § 250.20(2). If either party fails to comply with the statute's notice requirements, that party may be barred from presenting testimony relevant to the alibi. Alternatively, the court may, in its discretion, permit such testimony, but if an adjournment is requested prior to the testimony, the court must grant an adjournment of up to three days. N.Y.Crim.Proc.Law § 250.20(3)–(4). The notice deadlines may be extended for good cause shown. N.Y.Crim. Proc. Law § 250.20(1)–(2).

In this case, Fox gave the state pre-trial notice of the names of his two alibi witnesses.[1] The state, in turn, gave Fox no reciprocal notice in advance of the trial that it planned to use rebuttal witnesses. Instead, at the close of Fox's case, the state announced its intention to call Detectives Chapman and Hicks as alibi rebuttal witnesses. When Fox complained that the state had failed to meet its obligations under § 250.20, the trial court declined to exclude the detectives' testimony, but in the exercise of its discretion it did grant a continuance of two days—which it then shortened to one day—to allow Fox's counsel time to interview the detectives before they testified.

The circumstances of this case illustrate a problem that underlies notice-of-alibi statutes generally. Depending on the extent and specificity of the defendant's alibi disclosure, it may be difficult for the prosecutor to know in advance of trial what witnesses to call in order to provide rebuttal testimony. As we shall see, this difficulty alone does not necessarily excuse non-compliance with a reciprocal notice-of-alibi statute. In this case, however, the testimony of the state's two rebuttal witnesses—that the testimony of the two alibi witnesses was inconsistent with their own prior statements—focused on something that the state did not know and could not reasonably have known until the alibi witnesses had testified. *Cf. Thomas v. Goldsmith,* 979 F.2d 746, 748 (9th Cir.1992) (Prior to the presentation of the defendant's alibi, of which the state had no notice, "the prosecution neither expected nor had reason to expect that the rebuttal witness' testimony would be relevant."). In such circumstances, requiring a prosecutor to divulge his or her alibi rebuttal witnesses during pretrial proceedings, on pain of not being permitted to present those witnesses, would require that the prosecutor base his or her disclosures on little more than speculation about what might happen at trial. Due process does not require such speculation.

We emphasize the limits of our holding. We do not suggest that a prosecutor may withhold, with impunity, the required pretrial notice of alibi rebuttal witnesses in every case in which the rebuttal witnesses' testimony goes to the credibility of alibi witnesses rather than to the substance of the alibi. There may, for instance, be cases in which the state learns information, in advance of the trial, that it knows with a fair degree of certainty will be useful in attacking the credibility of noticed alibi witnesses. In such cases, withholding notice of rebuttal witnesses until after the alibi witnesses have testified may be inadequate to meet the dictates of due process. And this may be so regardless of any continuance that the trial court might grant.

This was the case in *Mauricio v. Duckworth,* 840 F.2d 454 (7th Cir.), *cert. denied,* 488 U.S. 869, 109 S.Ct. 177, 102 L.Ed.2d 146 (1988). There, the state learned, prior to trial, of a witness who would testify that she had been present at a conversation in which

---

1. The appellees complain that Fox's notice of alibi was inadequate in that it did not disclose the substance of his alibi, contrary to the statutory requirement that Fox disclose "the place or places where the defendant claims to have been at the time in question." N.Y.Crim.Proc.Law § 250.20(1). As a result, the appellees argue that since Fox failed to meet his own statutory disclosure obligations, he cannot complain about the state's shortcomings. Because the appellees did not advance this contention before the district court, and because Fox's claim fails on the merits, we need not address this argument.

two of the defendant's listed witnesses agreed to testify falsely in support of the defendant's alibi. The state did not include this witness in its pretrial list of witnesses. Instead, it waited until the two alibi witnesses had testified to announce its intention to call the rebuttal witness. *Id.* at 456. Since the state knew in advance of trial that, whatever the alibi witnesses' testimony, the state would be able to launch a devastating counterattack, the failure to give pretrial notice created precisely the kind of unfair, irremediable surprise that, as *Wardius* held, violates due process. *Wardius*, 412 U.S. at 476, 93 S.Ct. at 2213.

We also do not suggest that the failure to give pretrial notice may be excused in every case in which the relevance of a potential rebuttal witness's testimony is unclear until after the defendant's alibi witnesses have testified. The relevance of rebuttal testimony is, in a sense, always contingent until after the defendant's alibi witnesses have been heard. But this fact does not automatically exempt the prosecution from the requirement that notice be given. What matters is the extent of the prosecutor's knowledge about the defendant's planned alibi. In *United States v. Myers*, 550 F.2d 1036 (5th Cir.1977), for example, the prosecutors received pretrial notice of the defendant's alibi and observed the presentation of the alibi at trial. Following that proceeding, which ended in a mistrial, the prosecutors found rebuttal witnesses who could dispute the substance of the alibi witnesses' testimony at a second trial. The prosecutors did not, however, inform the defendant of their new witnesses, as the federal notice-of-alibi provision required them to do. *See id.* at 1040; Fed. R.Crim.P. 12.1. While the relevance of the rebuttal witnesses' testimony remained contingent until after the defendant presented his alibi, this fact did not in any way excuse the prosecutors' failure to identify their rebuttal witnesses before the second trial.

What makes the state's nondisclosure acceptable in the case before us is not the fact that the state's rebuttal witnesses attacked the credibility of Fox's alibi witnesses rather than the substance of the defense, nor is it the fact that the rebuttal witnesses' testimony did not become relevant until after the alibi witnesses had testified. It is, rather, that in this case, prior to the alibi witnesses' testimony, there was no reason to believe that the two detectives would have anything to rebut. Only when the prosecution learned from the alibi witnesses' trial testimony that they had altered the tale they had told the detectives earlier did the detectives become useful witnesses. Until the alibi witnesses actually testified, any assumption that their stories would differ materially from their prior statements to the detectives would have been based on no more than sheer guesswork.

Fox may consider the disclosure of such a guess to be useful, even important. And we acknowledge that Fox's case was harmed by the rebuttal witnesses' testimony. Moreover, allowing Fox's counsel to interview the two rebuttal witnesses prior to their testimony, but after the alibi witnesses had testified—as the court did—did little to alleviate this harm. We nevertheless conclude that, where the prosecutor was not, and could not reasonably have been, aware of the facts that gave rise to the opportunity for such a rebuttal until after the alibi witnesses had testified, pretrial identification of the rebuttal witnesses was not required by due process.

### B. *Jury Instructions*

█ Fox next claims that the trial judge's instructions to the jury impermissibly shifted the burden of persuasion from the state to Fox.[2] Fox rests his argument on the judge's statements, while instructing the jury on Fox's alibi, that an alibi is "a defense interposed by Defendant" and that "[y]ou must determine whether those [alibi] witnesses are testifying truthfully." The jury, in Fox's view, could reasonably have interpreted these statements as placing on Fox the burden of proving the truth of his alibi.

---

**2.** It is not clear that Fox has raised this issue or the issue of prosecutorial misconduct, discussed *infra*, as independent grounds for his appeal. Since he does, however, discuss them in his brief in challenging the fundamental fairness of the proceedings against him, we think it appropriate to explain why they do not cast doubt on his conviction.

But these isolated statements will not bear the weight that Fox would place on them. When we review a claim of an erroneous jury charge, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *United States v. Locascio,* 6 F.3d 924, 942 (2d Cir.1993) (quoting *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)), *cert. denied,* — U.S. ——, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994). In this case, the trial judge repeatedly emphasized, in clear and precise language, both in her instructions on the alibi and elsewhere in her charge, that the state bore the entire burden of proving Fox's guilt beyond a reasonable doubt, and that Fox bore no burden whatsoever. Viewing the instructions as a whole, we conclude that no reasonable jury could have understood the phrases on which Fox relies as shifting any burden to Fox.

## C. *Prosecutorial Misconduct*

Finally, Fox claims that the prosecutor impermissibly suggested to the jury that Fox's failure to testify was evidence of his guilt when she said, "Your Honor, I am requesting, if the defendant wants to speak, he can take the stand." This statement, Fox asserts, deprived him of a fair trial. The Fifth Amendment bars a prosecutor from inviting a jury to draw a negative inference from the defendant's failure to testify, *United States v. Robinson,* 485 U.S. 25, 32, 108 S.Ct. 864, 868, 99 L.Ed.2d 23 (1988); *Griffin v. California,* 380 U.S. 609, 614, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965), and the prosecutor's remark certainly violated this precept.

The impropriety of the prosecutor's statement, however, does not end the inquiry. The question before us is "whether 'the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair.'" *Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir.1990) (quoting *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir. 1986)).

We believe that Fox has failed to make the required showing of prejudice. The remark in question was not a calculated appeal directed to the jury in a closing argument. *See, e.g., Floyd,* 907 F.2d at 353–55 (*habeas corpus* was granted where the prosecutor, in her summation, improperly commented on the defendant's failure to testify, vouched for a witness, and repeatedly described the defendant as a "liar"). Instead, the outburst here appears to have been spontaneous, directed to the trial judge rather than to the jury, and made in response to the defendant's own misconduct. Although the remark was certainly improper, the prejudice to Fox caused by the prosecutor's words in these circumstances was bound to be limited. Moreover, the trial judge responded to the remark with a thorough instruction to the jury, in which she informed the jury that the prosecutor had acted improperly, reminded them that Fox had no obligation whatsoever to testify, and stated that the jury could not draw any negative inference from his failure to do so.

Fox does not take issue with the substance of the court's instruction. His contention, then, must be that, although the court's instruction was substantively correct, the fact that the court did not issue the instruction immediately was itself the source of significant prejudice. We cannot agree. We acknowledge that some courts have indicated that a trial judge's general reminder, in the instructions at the close of trial, that the defendant is under no obligation to testify is insufficient to cure the prejudice of a prosecutor's comment on the defendant's failure to take the stand; we also acknowledge that these courts have criticized the trial courts for failing to give remedial instructions immediately. *See Lesko v. Lehman,* 925 F.2d 1527, 1546–47 (3d Cir.), *cert. denied,* 502 U.S. 898, 112 S.Ct. 273, 116 L.Ed.2d 226 (1991); *Hearn v. Mintzes,* 708 F.2d 1072, 1078 (6th Cir.1983). But we do not read these cases as establishing a bright-line rule under which any delay, no matter how insignificant, in giving a corrective instruction would by itself render the instruction inadequate to cure prejudice to the defendant.

In this case, the trial court gave its remedial instruction as the first order of business on the morning following the afternoon in which the prosecutor had made her improper

comment. Moreover, the court's instruction was not simply a general statement that the defendant did not have to testify. Instead, the court pointedly and unambiguously reprimanded the prosecutor for her inappropriate remark. Under these circumstances, the court's instruction was both forceful enough and sufficiently proximate in time to overcome whatever limited adverse effect the prosecutor's outburst may have had on the jury.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court denying Fox's petition for a writ of *habeas corpus*.