**Jose VASQUEZ, Petitioner–Appellant,**

**v.**

**Wayne STRACK, Superintendent, Fishkill Correctional Facility, Respondent–Appellee.**

**No. 98–2590.**

United States Court of Appeals, Second Circuit.

Argued: June 24, 1999.

Decided: Sept. 14, 2000.

Mitchell J. Briskey, the Legal Aid Society, New York, NY, for Appellant.

Jennifer Correale, Assistant District Attorney, Bronx, NY (Robert T. Johnson, Bronx County District Attorney, Craig Steinberg, Joseph N. Ferdenzi, Nancy D. Killian, Assistant District Attorneys, of counsel), for Appellee.

Lawrence S. Lustberg, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, filed a brief on behalf of amici curiae Honorable James Deanda, Honorable Marvin E. Frankel, Honorable A. Leon Higginbotham, Honorable Shirley M. Hufstedler, Honorable George N. Leighton, Honorable James K. Logan, Honorable Abner J. Mikva, Honorable Lawrence W. Pierce, Honorable George C. Pratt,

Honorable John V. Singleton, Jr., and Honorable Harold R. Tyler, Jr., in support of Appellant's position.

Before: MINER, JACOBS, and PARKER, Circuit Judges.

PARKER, Circuit Judge:

Jose Vasquez appeals from the judgment of the United States District Court for the Southern District of New York (Loretta A. Preska, Judge), denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court granted a certificate of appealability on July 27, 1998.

On appeal, Vasquez argues, *inter alia,* that (1) the court below incorrectly interpreted the standard by which federal courts must review state court judgments under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d)(1), as requiring deference to state court interpretations of Supreme Court precedent;[1] and (2) that under any interpretation of § 2254(d)(1), the Supreme Court's decision in *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), compels a finding that he was deprived of due process and a fair trial because the prosecution withheld reciprocal notice of its alibi rebuttal witness to his substantial prejudice. Respondents argue, *inter alia,* that the district court properly interpreted § 2254(d)(1) to bar relief and that regardless of how § 2254 is interpreted, Vasquez is barred from relief under *Teague v. Lane,* 489 U.S. 288, 315–16, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), because he seeks to establish a new rule of constitutional criminal procedure.

We held the disposition of this case pending the Supreme Court's decision in *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), which resolved much of the debate over the interpretation of § 2254(d)(1). In light of *Williams,* we hold that § 2254(d)(1) bars relief in this case because the federal law that Vasquez argues should apply to his case was not "clearly established ... as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, we affirm.

## I. BACKGROUND

On November 20, 1990, petitioner was convicted in New York Supreme Court, Bronx County, following a jury trial for Felony Murder and Robbery in the First Degree as a result of his participation in the July 2, 1988 robbery of the Good Times Lounge, during which the owner was shot and killed. The primary evidence for the prosecution was the eyewitness identifications by the deceased's common-law wife and a waitress, both present at the bar during the robbery.

Petitioner's defense consisted primarily of four alibi witnesses: his sister, his brother, and two neighbors who lived in his apartment building. His sister, Iris Vasquez, testified that she watched petitioner from around noon to 3:30 pm, working on the limousine that Vasquez and his brother, Moses Burgos, were to drive to a wedding the following day, July 3, 1988. His brother testified that on July 3, 1988, he and Vasquez drove to the wedding in a limousine. The neighbors, Rosa Colon and her teenage daughter Lisa Martinez, testified that on the afternoon of July 2, 1988, during the time the robbery took place,

---

1. Amici argue in support of this position that a deferential standard of review would unconstitutionally usurp the Article III powers of the federal courts to decide issues of constitutional law properly presented to them for review. Amici also argue that reading § 2254(d)(1) to confine a habeas court's review of the "law" to Supreme Court cases, as opposed to including lower court interpretations of the general constitutional principles set out in Supreme Court cases, negates the role of the lower federal courts envisioned by this nation's founders. They assert that the Supreme Court simply cannot be expected to clarify the operation of every rule of constitutional law, and therefore the Courts of Appeals must provide the necessary clarity.

they saw petitioner working on a car in the parking lot of their apartment building. Colon testified that at about 1:00 pm that day, she accompanied her daughter to a nearby pay phone to call her daughter's doctor, Dr. Perez, to cancel an appointment for 2:00 pm that day. After her daughter made the call, they sat outside near petitioner until about 4:00 pm. Martinez testified that she called Dr. Perez that day to cancel the appointment, and that Dr. Perez was either not there or was in a meeting and so she spoke to a secretary. Martinez also testified that she was outside with her mother and petitioner until about 4:00 pm. On cross-examination, she stated that Dr. Perez had called her earlier to cancel the appointment, and that she was calling the doctor to find out why the appointment was canceled.

After Colon and Martinez testified on October 15, 1990, the judge asked the parties if they would be prepared to present summations the following day. The prosecutor then stated that he might call Dr. Perez as a rebuttal witness. He claimed to have been contacting all of the people named Dr. Perez in a specific location to no avail, but now that he knew where she worked from Martinez's testimony, he might be able to locate her. The judge continued the case until October 18, 1990.

On October 18, 1990, the prosecutor first requested permission to call Dr. Perez as a rebuttal witness. He requested to call her that day, although the defense had not yet rested, because it would be a hardship for her to return the following Monday. Defense counsel objected, arguing that the prosecution had not provided alibi rebuttal notice as required by N.Y.Crim. Proc. Law § 250.20(2). Defense counsel stated that several months before trial, he had served a notice of intent to present an alibi defense on the prosecution that included the names of these two alibi witnesses and a statement of the their intended testimony. The prosecution, however, had never given him any notice of any alibi rebuttal witnesses. Defense counsel argued that ad-

mitting the rebuttal testimony under these circumstances would be reversible error. The court nevertheless allowed Dr. Perez to testify out of order. She testified that she could not independently recall the particular day or appointment, but she had reviewed Martinez's records, and they did not indicate that Martinez ever had an appointment scheduled with her for July 2, 1988. She testified that she had only two scheduled appointments with Martinez in July; she saw Martinez on July 15, 2000 and Martinez canceled another appointment scheduled for July 29, 2000. Perez also testified that the clinic was closed on Saturdays; July 2, 1988 was a Saturday.

Vasquez was convicted, and he appealed his convictions to the Appellate Division, First Department, alleging, *inter alia*, that the trial court erred in allowing the alibi rebuttal testimony. On January 7, 1993, the Appellate Division affirmed the convictions, but remanded for resentencing. The court held that the "trial court properly allowed the testimony of the People's rebuttal witness." *People v. Vasquez*, 189 A.D.2d 578, 592 N.Y.S.2d 34, 35 (1st Dep't 1993). Vasquez thereafter received leave to appeal to the New York Court of Appeals. On March 17, 1994, that court overturned his felony murder conviction because the trial court had lacked the authority to amend the indictment. *People v. Perez*, 83 N.Y.2d 269, 276, 631 N.E.2d 570, 609 N.Y.S.2d 564 (1994). As to Vasquez's argument that permitting the alibi rebuttal witness to testify violated his due process rights, the court stated only that it had "reviewed defendant['s] other contentions and they are without merit." *Id.* The court remanded the case for resentencing. Vasquez appealed the new sentence, but it was affirmed by the Appellate Division, and leave to appeal to the Court of Appeals was denied.

On December 31, 1996, Vasquez filed a petition for a writ of habeas corpus in federal district court. He argued that allowing the alibi rebuttal witness to testify violated his right to due process under

*Wardius,* 412 U.S. 470, 93 S.Ct. 2208. The petition was referred to then-Magistrate Judge Naomi R. Buchwald, who issued her Report and Recommendation on April 20, 1998. The Magistrate Judge applied the AEDPA standard of review to Vasquez's petition, holding that the plain language of § 2254(d)(1) requires deference to state court determinations on the merits, as opposed to procedural dismissals. The Magistrate Judge concluded that the state courts' decisions rejecting petitioner's due process argument on the merits "were not contrary to, or unreasonable applications of, established federal law." The Magistrate Judge reasoned that the only Supreme Court pronouncement on the subject, *Wardius,* held merely that a state alibi notice statute violates due process if it fails to require reciprocal discovery. This case, however, presents the issue of whether a state court violates due process by allowing alibi rebuttal testimony where the prosecution arguably should have known through investigation before the alibi witnesses testified that its rebuttal witness could refute the alibi testimony, and yet did not provide reciprocal alibi discovery.

The Magistrate Judge also reviewed cases from the Courts of Appeals that address a prosecution's failure to provide reciprocal notice of alibi rebuttal witnesses under circumstances lying at either end of the spectrum of reasonableness. At one end, the prosecution's deliberate withholding of the name of an intended alibi rebuttal witness violates due process under *Wardius. See Mauricio v. Duckworth,* 840 F.2d 454, 459 (7th Cir.1988); *United States v. Myers,* 550 F.2d 1036, 1043 (5th Cir.1977). At the other end, where the prosecution could not reasonably have known of the need for an alibi rebuttal witness until after the alibi witness testified, there is no due process violation in allowing the rebuttal witness to testify. *See Fox v. Mann,* 71 F.3d 66, 70 (2d Cir.1995). After reviewing these cases, the Magistrate Judge stated that in the absence of authority governing the specific circumstances in Vasquez's case, she could

not conclude that the state courts' decisions were contrary to or unreasonable applications of federal law. Thus, § 2254(d)(1) barred his claim. In addition, the Magistrate Judge noted that any relief based on Vasquez's arguments was likely *Teague*-barred.

The district court adopted the Report and Recommendation of Magistrate Judge Buchwald, taking into consideration the objections of the parties. Because of the complexity and unresolved status of the law on § 2254(d)(1), the district court issued a certificate of appealability. Petitioner filed a timely appeal.

## II. DISCUSSION

A. *Williams v. Taylor, Section 2254(d)(1), and Teague v. Lane*

The parties and amici argue extensively over the applicability and meaning of § 2254(d)(1), citing various authority in support of their positions. The parties also argue over whether *Teague* separately bars Vasquez's petition. Since the filing of the briefs and oral argument in this case, however, the Supreme Court in *Williams* has resolved the dispute over the applicability and meaning of § 2254(d)(1). We therefore analyze the issues raised by Vasquez's petition under *Williams.*

Vasquez's petition was filed after the enactment of AEDPA, and is therefore subject to review pursuant to § 2254 as amended by AEDPA. *See Williams,* 120 S.Ct. at 1518 ("Because [petitioner] filed his petition [after the enactment of AEDPA, his] case is governed by the statute as amended by AEDPA."). As part of AEDPA, Congress enacted 28 U.S.C. § 2254(d)(1), which provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1). This provision "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits." *Williams*, 120 S.Ct. at 1523 (O'Connor, J., writing for the Court).

■ The question for this Court then is whether under the circumstances of this case, the state court's decision to allow an unnoticed alibi rebuttal witness to testify was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In making this determination, "[t]he threshold question ... is whether [petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams*, 120 S.Ct. at 1511 (Stevens, J., writing for the Court).

In *Williams*, the Court answered this threshold question with reference to the principles set out in *Teague*. *See Williams*, 120 S.Ct. at 1512 (Stevens, J., writing for the Court) (citing *Teague*, 489 U.S. at 301, 109 S.Ct. 1060, for the proposition that a rule of law is clearly established if a Supreme Court precedent "dictated" an outcome and the rule sought to be applied did not "break[ ] new ground or impose[ ] a new obligation on the States"). Justice Stevens, writing for four Justices, explained the effect of § 2254(d)(1) on *Teague* as follows:

> It is perfectly clear that AEDPA codifies *Teague* to the extent that *Teague* requires federal habeas courts to deny relief that is contingent upon a rule of law not clearly established at the time the state conviction became final.
>
> *Teague*'s core principles are therefore relevant to our construction of this requirement.

*Id.* at 1506 (Stevens, J., writing for four Justices) (footnote omitted). It is this reasoning that Justice Stevens later applied in determining for the Court whether petitioner was seeking to apply " 'clearly established Federal law' " under AEDPA. *Id.* at 1512 (Stevens, J., writing for the Court) (quoting 28 U.S.C. § 2254(d)(1)). Furthermore, although Justice O'Connor, in writing for the Court on the interpretation of § 2254(d)(1), for the most part "put to the side" the meaning of the phrase "clearly established Federal law, as determined by the Supreme Court," she did state that

> [w]ith one caveat, whatever would qualify as an old rule under our *Teague* jurisprudence will constitute "clearly established Federal law, as determined by the Supreme Court of the United States" under § 2254(d)(1). The one caveat, as the statutory language makes clear, is that § 2254(d)(1) restricts the source of clearly established law to this Court's jurisprudence.

*Id.* at 1523 (O'Connor, J., writing for the Court) (citation omitted).

■ As we view *Williams*, we must apply § 2254(d)(1) as the "new constraint" on habeas review of state court judgments, but we may still draw on *Teague*-based cases where appropriate to decide cases that present questions under the "clearly established Federal law" requirement of § 2254(d)(1). If petitioner's claim requires us to apply a rule of law that was not clearly established Federal law as determined by the Supreme Court at the time of the state court determination, Section 2254(d)(1) bars relief.

B. *Section 2254(d)(1) Bars Relief Because the Law Vasquez Seeks to Have Applied Is Not Clearly Established Federal Law, as Determined by the Supreme Court*

■ Vasquez argues that *Wardius*, the only Supreme Court pronouncement on the requirement of reciprocal alibi discov-

ery, is "'clearly established' constitutional law and governs his claim." In *Wardius*, the Supreme Court held that due process prohibits the enforcement of alibi notice rules unless criminal defendants are given the opportunity for reciprocal discovery. *See* 412 U.S. at 472, 93 S.Ct. 2208. The Court relied on broad principles of fairness as the basis for its holding:

> [W]e ... hold that in the absence of a strong showing of state interests to the contrary, discovery must be a two-way street. The State may not insist that trials be run as a "search for truth" so far as defense witnesses are concerned, while maintaining "poker game" secrecy for its own witnesses. It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State.

*Id.* at 475–76, 93 S.Ct. 2208 (footnote omitted). The Court further noted that "the State's inherent information-gathering advantages suggest that if there is to be any imbalance in discovery rights, it should work in the defendant's favor." *Id.* at 475 n. 9, 93 S.Ct. 2208.

Read narrowly, *Wardius* held merely that a state alibi notice statute violates due process if it fails to provide for *any* reciprocal discovery. New York's alibi notice statute clearly provides for reciprocal discovery. *See* N.Y.Crim. Proc. Law § 250.20.[2] Read very broadly, however, *Wardius* held that where a defendant is required to provide alibi-related discovery, due process requires a trial court to prevent unfair, irremediable surprise by the prosecution. The application of *Wardius* to this case thus presents the

> inevitable difficulties that will arise in attempting "to determine whether a particular decision [would] really announce[ ] a 'new' rule at all or whether it [would] simply appl[y] a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior case law."

*Mackey v. United States*, 401 U.S. 667, 695, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971)(Harlan, J., concurring) (quoting *Desist v. United States*, 394 U.S. 244, 263, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969)).

■ "*Teague* established some guidance for making this determination." *Williams*, 120 S.Ct. at 1506 (Stevens, J., writing for four Justices). That guidance may be applied here to determine whether the rule sought to be applied by Vasquez is "clearly established Federal law" under § 2254(d)(1). A rule that "breaks new ground or imposes a new obligation on the States," *Teague*, 489 U.S. at 301,, 109 S.Ct. 1060 is not clearly established Federal law under § 2254(d)(1) and is therefore not cognizable on collateral review. Rather, to prevail on collateral review, Supreme

2. The New York statute provides that within twenty days of arraignment the People may serve a demand for notice of alibi. The defendant must respond within eight days, specifying the location where the defendant claims to have been at the time of the offense and the identities of the intended alibi witnesses. N.Y.Crim. Proc. Law § 250.20(1). The statute further provides that:

> Within a reasonable time after receipt of the defendant's witness list but not later than ten days before trial, the people must serve upon the defendant or his counsel, and file a copy thereof with the court, a list of the witnesses the people propose to offer in rebuttal to discredit the defendant's alibi at the trial. ... For good cause shown, the court may extend the period for service of the list of witnesses by the people.

*Id.* § 250.20(2). If the People do not provide notice, the trial court may exclude the testimony of such witness relating to the alibi rebuttal or may, within its discretion, allow the rebuttal testimony. If the trial court allows the rebuttal testimony, it must grant a three day continuance at the request of the defendant. *Id.* § 250.20(4). "Both the defendant and the people [are] under a continuing duty to promptly disclose the names and addresses of additional witnesses which come to the attention of either party subsequent to filing their witness lists as provided in this section." *Id.* § 250.20(5).

Court precedent must "dictate" the outcome. *See id.*

Vasquez relies on this Court's decision in *Fox* to argue that a trial court must prevent "the kind of unfair, irremediable surprise that, as *Wardius* held, violates due process." *Fox*, 71 F.3d at 71 (citing *Wardius*, 412 U.S. at 476, 93 S.Ct. 2208). The statement in *Fox* upon which Vasquez relies, however, is dicta, and we decline to rely upon it.[3] Vasquez nevertheless argues that under *Wardius* itself, a trial court must preclude alibi rebuttal evidence that was "reasonably available" to the prosecution through investigation, but not turned over to the defense before the alibi witnesses testified. Vasquez argues that under *Wardius*, it is the duty of the prosecution reasonably to investigate the defendant's alibi *before* the alibi witnesses testify in order to prevent such unfair surprise. Here, the prosecution could have obtained the name of the doctor and the clinic location by simply interviewing the alibi witnesses. According to Vasquez then, because the prosecution neglected to conduct this basic investigation, it should have been precluded from calling Dr. Perez absent notification to the defendant of its intent to call Dr. Perez.

Respondent contends that the prosecution was in a very similar position to that of the prosecution in *Fox*. Vasquez provided the names of his alibi witnesses to the prosecution, but the accompanying statements of these witnesses indicated that a Mrs. Perez had called to cancel Martinez's clinic appointment. Not until after Colon and Martinez testified did the prosecution know the name of the clinic or that Perez was the doctor with whom Martinez had the appointment. Therefore, according to

respondent, the prosecution did not know and could not reasonably have known that Dr. Perez's testimony would be useful until after Colon and Martinez testified, and under *Fox*, Vasquez has failed to state a due process violation.

■ We need not comment on whether or not Vasquez states a constitutional violation at all, because we cannot agree with Vasquez that *Wardius* "dictates" that due process was violated in this case. The Seventh Circuit has suggested that the prosecution's deliberate withholding of the name of an intended alibi rebuttal witness violates due process under *Wardius*. *See Mauricio v. Duckworth*, 840 F.2d 454, 459 (7th Cir.1988) (pre-AEDPA habeas review of state court judgment). Even if *Wardius* dictated that rule, *Wardius* does not place a duty on the prosecution to determine the existence of potential rebuttal witnesses that it should have found through reasonable investigation of a defendant's alibi; if we were to adopt this rule of constitutional law proposed by Vasquez, we would be creating a new obligation for the states. *Wardius* simply does not clearly establish that due process requires preclusion of alibi-rebuttal-witness testimony where, as here, the prosecution fails to complete an investigation into the identities of potential alibi-rebuttal witnesses until after the alibi witnesses testify, particularly where the alibi witnesses' testimony provided the information that was arguably necessary to identify and locate the rebuttal witness. To hold as much would be to extend *Wardius*. Thus, § 2254(d)(1) precludes relief in this case.

---

**3.** In *Fox,* two alibi witnesses testified in a manner inconsistent with statements they had earlier given the police, and therefore the prosecution could not have known beforehand that the alibi witnesses would contradict their earlier statements. *See* 71 F.3d at 71. This Court held that where a prosecutor did not know, and could not reasonably have known, of facts giving rise to the opportunity

for rebuttal until after an alibi witness testified, permitting a rebuttal witness to testify despite a lack of notice does not violate due process. *See id.* Thus, *Fox* held that the petitioner failed to state a constitutional violation and any comment on what might constitute a constitutional violation under *Wardius* was dicta.

## III. CONCLUSION

For the foregoing reasons, we affirm the denial of Vasquez's petition for a writ of habeas corpus.