OPINION OF THE COURT
Darrell L. Gavrin, J.
On July 8, 2010, defendant Karon Lenihan was convicted, following a jury trial, of murder in the second degree (Penal Law § 125.25). Pursuant to CPL 330.30 (1), on July 15, 2010, defendant moved to set aside the verdict claiming that the record contained errors that would require reversal of the judgment of conviction by an appellate court.
On September 13, 2010, the court heard oral arguments. Specifically, defendant claimed that the court erred in precluding cross-examination of the People’s witnesses about their alleged gang affiliation thereby violating his constitutional right to confrontation and denying him the opportunity to establish their biases, credibility and motive for the jury. Defendant further averred that the court erred in permitting the People to call a rebuttal witness in violation of CPL 250.20 (2).
In opposition, the People asserted that the court providently exercised its discretion in precluding defendant from cross- *291 examining the People’s witnesses about their alleged gang affiliation and in allowing the People’s rebuttal witness to testify despite the lack of written notice. Moreover, the court cured the defect, if any, in granting defendant a three-day adjournment. (See CPL 250.20 [3], [4].)
On September 20, 2010, the court denied defendant’s motion on the record and issued an order. The verdict of the jury was upheld in all respects. The victim’s mother and brother addressed the court and then defendant was sentenced to a period of incarceration of 20 years to life for the murder of Patrick Hernandez.
Facts
On July 10, 2008, defendant was arrested for the murder of Patrick Hernandez. Subsequently, he was indicted by the grand jury of Queens County for murder in the second degree (Penal Law § 125.25) and criminal possession of a weapon in the fourth degree (Penal Law § 265.01).*
On June 8, 2010, the trial commenced before this court. At trial, the jury heard testimony that on the morning of July 10, 2008, the victim Patrick Hernandez, his brother Raphael Jones, his friends Craig Gulledge and Ramel Gittens, and defendant Karon Lenihan worked together at the summer youth employment program with the Rockaway Development and Revitalization Corporation. At approximately 10:00 a.m., Carmelo Delgado, the program coordinator, dismissed all of the workers because it was too hot to work.
After dismissal, Davonne Gittens came to pick up Craig Gulledge, Ramel Gittens, and others with his car. Patrick Hernandez and Raphael Jones began to walk home. While Davonne Gittens, Ramel Gittens, and Craig Gulledge were in the car, they saw defendant get into a dark blue car. They watched the car head in the same direction that Patrick Hernandez and Raphael Jones were walking.
At approximately 10:38 a.m., as Raphael Jones and Patrick Hernandez walked on Beach 15th Street near Seagirt Boulevard, the blue car pulled up, defendant got out of the back of the car holding a shotgun and shot Patrick Hernandez in the chest causing his death. Raphael Jones was standing next to his brother at this time. Meanwhile, Davonne Gittens, Ramel Git- *292 tens, and Craig Gulledge heard a loud gunshot, drove to 249 Beach 15th Street, observed Patrick Hernandez holding his stomach while falling to the ground and heard Raphael Jones shout, “Karon shot my brother.”
Defendant denied killing Patrick Hernandez and stated that he left work and walked directly home. His mother, Millisa Lenihan, claimed that she was home when he came in at approximately 10:40 a.m. Defendant’s sister, Latisha Lenihan, remembered that defendant was home at approximately 11:00 a.m. While home, defendant received a call at 10:53 a.m. on his cell phone from his girlfriend, Shania Barnes. Defendant asked Shania Barnes to call him on his home phone number. Shania Barnes corroborated that, at about 11:00 a.m., she spoke to defendant on his cell phone, and a minute later on his house phone. She stated that the cell phone number 516-XXX-XXXX on her telephone records was the cell phone number belonging to defendant.
Defendant confirmed that his cell phone number was 516-XXX-XXXX, despite the fact that the subscriber information was in the name of Tammy Cohen. Defendant further acknowledged that he had exclusive possession of his cell phone on the day of the murder.
The People called Andrew Searfoss, a T-Mobile legal compliance agent, to rebut defendant’s alibi defense. Mr. Searfoss explained that, according to the cell tower site information, on July 10, 2008, at 10:40 a.m., defendant’s cell phone was located east of 20-10 Seagirt Boulevard, which is located east of defendant’s home. After a three-day court adjournment, defendant called an expert witness to contradict the testimony of the People’s expert about the cell phone tower locations.
Conclusions of Law
In order for the court to set aside the verdict, defendant must establish that an error “appear[s] in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court.” (See CPL 330.30 [1].)
In the instant case, defendant’s assertion that he was denied a fair trial when the court limited the cross-examination of the People’s witnesses about their gang involvement is without merit. Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. The motivation of a witness in testifying, including his *293 possible self-interest and any bias or prejudice against the defendant, is one of the principal subjects for cross-examination. (Davis v Alaska, 415 US 308 [1974].) Proof aimed at establishing a motive to fabricate is never collateral and may not be excluded on that ground. However, cross-examination of a witness to establish such a motive must proceed on some good faith basis. A trial court may, in the exercise of its discretion, properly exclude such proof where it is too remote or speculative. (People v Ocampo, 28 AD3d 684 [2d Dept 2006].) Trial courts have providently exercised their discretion in precluding cross-examination of prosecution witnesses regarding their alleged gang affiliation when it is speculative and lacks a good faith basis. (People v Williams, 222 AD2d 469 [2d Dept 1995]; see also People v Samlal, 292 AD2d 400 [2d Dept 2002].)
In the case at bar, defendant requested, in limine, a ruling on whether defendant could cross-examine the People’s witnesses, Raphael Jones and Craig Gulledge, about their alleged gang membership and that of the deceased, Patrick Hernandez. In support of this motion, defendant relied on photographs that his mother downloaded from the Internet Web site “MySpace” four days after the murder of Patrick Hernandez. Defendant did not know who took these photographs or posted them on “MySpace.” The photographs allegedly depict the witnesses and Patrick Hernandez making hand gestures and wearing articles of clothing that suggest an affiliation with the “Crips” gang.
Defendant sought to confront the witnesses with the photographs and ask questions to establish “a link between the witnesses, if not also the deceased, to wit: membership in the same gang and a possible motive to fabricate their story to blame defendant who they may have thought was a member of the 40’s gang or to protect other members of their gang.” (Defense attorney’s affirmation at 5.) Defendant claimed that the photographs established a good faith basis to question the witnesses about their affiliation with the “Crips” and that of the deceased, Patrick Hernandez. Remarkably, defendant denied being a member of the 40’s gang and did not proffer one witness that could testify that the victim or witnesses were known gang members.
The People claimed that the photographs did not provide defendant with a good faith basis to question the witnesses about gang affiliation; the line of inquiry was too remote and speculative. Moreover, the People maintained that this line of questioning would unfairly prejudice the People by placing the victim’s *294 character into evidence despite the absence of a justification defense.
The court denied defendant’s in limine motion; defendant was precluded from cross-examining the People’s witnesses about their gang affiliation and confronting them with the “MySpace” photographs. In light of the ability to “photoshop,” edit photographs on the computer, defendant could not authenticate the photographs. Regardless, defendant was unable to persuade the court that certain hand gestures and articles of clothing worn by the witnesses in the photographs provide a good faith basis to allow cross-examination about gang affiliation. Moreover, defendant’s contention that the witnesses may have had a motive to lie because they may have thought defendant was a member of a rival gang was too speculative; defendant denied being a member of the 40’s gang. Thus, the court precluded this line of inquiry holding that the photographs, alone, did not establish a sufficient good faith basis to question the witnesses about gang involvement; the line of inquiry was too remote and speculative.
Moreover, the court was justified in precluding evidence of the victim’s character. Character evidence is not relevant unless the accused is shown to have been aware, at the time of the event, of the victim’s reputation for or other specific acts of violence. (Prince, Richardson on Evidence § 4-409 [Farrell 11th ed].) Defendant presented an alibi defense, not justification. Thus, character evidence had no probative value and only would have served to prejudice the jury (People v Miller, 39 NY2d 543 [1976]).
Additionally, defendant’s claim that the verdict should be set aside because the court erred in allowing the People to call a rebuttal witness contrary to CPL 250.20 (2), (3) and (4), violating his right to due process, is unfounded. Pursuant to CPL 250.20 (1), defendant served written notice of alibi. The People did not serve or file a list of any alibi rebuttal witnesses as required by CPL 250.20 (2). After defendant and his alibi witnesses testified, the court permitted, over defendant’s objection, the People to call an alibi rebuttal witness, Andrew Searfoss, and granted defendant a three-day adjournment pursuant to CPL 250.20 (2), (3) and (4).
“If at the trial the defendant calls such an alibi witness without having served the demanded notice of alibi . . . [t]he court may in its discretion receive such testimony, but before doing so, it must . . . grant an adjournment not in excess of *295 three days.” (CPL 250.20 [3].) Similarly, “if the people fail to serve and file a list of any rebuttal witnesses, the provisions of subdivision three, above, shall reciprocally apply.” (CPL 250.20 [4].)
Furthermore, defendant’s due process rights were not violated by the State’s failure to give reciprocal notice of its alibi rebuttal witnesses prior to trial where the prosecutor was not, and could not reasonably have been, aware of the facts that gave rise to the opportunity for rebuttal until after the alibi witnesses had testified. Requiring a prosecutor to divulge his or her alibi rebuttal witnesses during pretrial proceedings, on pain of not being permitted to present those witnesses, would require that the prosecutor base his or her disclosures on little more than speculation about what might happen at trial. Due process does not require such speculation. (Fox v Mann, 71 F3d 66 [2d Cir 1995].) Moreover, trial courts do not abuse their discretion in granting an adjournment after the People fail to serve notice as to an alibi rebuttal witness where a “contradiction goes to a material, core issue in the case — defendant’s whereabouts at the time of the crime.” (People v Cade, 73 NY2d 904, 905 [1989]; People v Vasquez, 189 AD2d 578 [1st Dept 1993].)
Defendant avers that the rebuttal evidence concerned cell towers and defendant’s cell phone calls monitored by these towers which were located near the crime scene and defendant’s home. Defendant asserts that the rebuttal evidence should have been brought out on the People’s direct case because the cell phone records placed defendant’s cell phone near the crime scene at the time of the murder.
The People contend that defendant’s due process rights were not violated by their failure to give reciprocal notice of the alibi rebuttal witness, Andrew Searfoss. The People claim that they were not and could not reasonably have been aware of the facts that gave rise to the opportunity for rebuttal until after defendant and his alibi witnesses testified. The People maintain that they knew about the purported alibi, but did not know that defendant had exclusive possession of his cell phone on July 10, 2008 until he testified; the phone was registered to Tammy Cohen. Moreover, the main purpose of the witness’ testimony was to rebut the alibi defense that defendant was home at 10:40 a.m. The cell tower records put defendant and his cell phone east of 20-10 Seagirt Boulevard and close to the scene of the crime, at that time.
Although the People failed to serve notice of a reciprocal alibi witness, it was well within the discretion of this court to allow *296 the witness to testify about a material issue and grant defendant a three-day adjournment pursuant to CPL 250.20 (3) and (4). This court finds that the People were not and could not reasonably have been aware of the facts that gave rise to the opportunity for rebuttal until after defendant and his alibi witnesses testified. The People did not know that defendant had exclusive possession of his cell phone on July 10, 2008 until he testified. The People called Andrew Searfoss, the T-Mobile representative, as a rebuttal witness to contradict defendant’s testimony regarding his whereabouts at the time of the murder. Defendant’s whereabouts at the time of the murder was a material issue in this case. Defendant claimed that he was home at the time of the murder; however, his cell phone records placed him close to the scene of the murder.
The court finds that defendant has failed to set forth any grounds for setting aside the jury verdict finding him guilty of murder in the second degree. Accordingly, defendant’s motion is denied in all respects.

 The People dismissed the count of criminal possession of a weapon in the fourth degree (Penal Law § 265.01) at trial.