Leandro **ANDRADE**, Petitioner–Appellant,

v.

**ATTORNEY GENERAL OF THE STATE OF CALIFORNIA; Ernest B. Roe, Warden, Respondents–Appellees.**

No. 99–55691.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 25, 2001

Filed Nov. 2, 2001

---

Erwin Chemerinsky, University of Southern California Law School, Los Angeles, California, for the petitioner-appellant.

Robert M. Foster, Deputy Attorney General, and Douglas P. Danzig, Deputy Attorney General, San Diego, California, for the respondents-appellees.

Before: SCHROEDER, Chief Judge, and SNEED and PAEZ, Circuit Judges.

Opinion by Judge PAEZ; Concurring and Dissenting Opinion by Judge SNEED

PAEZ, Circuit Judge:

Appellant Leandro Andrade was convicted in the Superior Court of California of two counts of petty theft for shoplifting a total of nine videotapes from two K–Mart stores. California generally treats such offenses as misdemeanors, each punishable by up to six months in county jail and up to a $1,000 fine. However, because Andrade had been convicted of several prior offenses—all non-violent—his petty thefts were first enhanced to felonies under California Penal Code § 666, and then enhanced again to third and fourth strikes under California's Three Strikes and You're Out Law, California Penal Code §§ 667 and 1170.12 ("the Three Strikes law"). As a result, Andrade, a non-violent recidivist who twice shoplifted merchandise worth a total of $153.54, received a life sentence in prison with no possibility of parole for 50 years.

In this appeal from the denial of his habeas petition under 28 U.S.C. § 2254, Andrade argues that his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. Four justices of the United States Supreme Court have agreed that the "unique quirk" in California's Three Strikes law that permits misdemeanor conduct to be punished with severe indeterminate sentences raises a substantial Eighth Amendment question. *Riggs v. California*, 525 U.S. 1114, 119 S.Ct. 890, 142 L.Ed.2d 789 (1999) (memorandum opinion by Justice Stevens, joined by Justices Souter and Ginsburg, respecting the denial of the peti-

tion for writ of certiorari).[1]

We hold that the California Court of Appeal unreasonably applied clearly established United States Supreme Court precedent when it held, on Andrade's direct appeal, that his sentence did not violate the Eighth Amendment's prohibition against cruel and unusual punishment. Our decision does not invalidate California's Three Strikes law generally. Rather, we conclude that it is unconstitutional only as applied to Andrade because it imposes a sentence grossly disproportionate to his crimes.

## I. BACKGROUND

### A. California's Three Strikes Law

California's Three Strikes law consists of a pair of substantively identical statutes both enacted in 1994, one by the California Legislature, Stats.1994, ch. 12, § 1, adding California Penal Code § 667(b)-(i), and one by a ballot initiative, Proposition 184, § 1, as approved by voters, Gen. Elec. (Nov. 8, 1994), adding California Penal Code § 1170.12. *See generally In re Cervera*, 24 Cal.4th 1073, 103 Cal.Rptr.2d 762, 16 P.3d 176, 177 (2001).

The purpose of the law is to impose longer terms of imprisonment on defendants with prior qualifying felony convictions or "strikes." *Id.* at 179. Under the law, only "serious" or "violent" felonies, as

defined in California Penal Code § 1192.7(c) and § 667.5(c) respectively, qualify as prior strikes. Cal.Penal Code §§ 667(d)(1), 1170.12(b)(1). The "triggering" (i.e., principal) offense, however, may be *any felony* under California law. *Cervera*, 103 Cal.Rptr.2d 762, 16 P.3d at 177 ("the Three Strikes law governs when a defendant is convicted of a felony or 'strike' *of any kind*") (emphasis added). This includes a so-called "wobbler" offense (which can be either a misdemeanor or felony) when charged and sentenced as a felony. *People v. Terry*, 47 Cal.App.4th 329, 54 Cal.Rptr.2d 769, 770–71 (Ct.App. 1996) (holding that the wobbler offense of petty theft with a prior, when charged and sentenced as a felony, may count as a third strike).

Under the "second-strike" provision of the Three Strikes law, when a defendant with one prior strike is convicted of *any felony*, the sentencing court must impose a sentence twice as long as the sentence the defendant would have otherwise received. Cal.Penal Code §§ 667(e)(1), 1170.12(c)(1); *Cervera*, 103 Cal.Rptr.2d 762, 16 P.3d at 177. When a defendant with two prior strikes is convicted of *any felony*, the "third-strike" provision mandates a sentence of at least 25 years to life (i.e., an indeterminate life sentence with eligibility for parole after serving no fewer than 25

---

**1.** *Riggs* concerned an Eighth Amendment challenge by a recidivist defendant sentenced to 25 years to life after stealing a bottle of vitamins from a supermarket. 525 U.S. 1114, 119 S.Ct. at 891. Riggs was convicted of petty theft with a prior (Cal.Penal Code § 666), which counted as his "third-strike" offense under California's Three Strikes law. The California Court of Appeal affirmed Riggs' sentence, and the California Supreme Court denied his petition for review. In his memorandum opinion, Justice Stevens, joined by Justices Souter and Ginsburg, noted that the Eighth Amendment issue presented was "obviously substantial, particularly since California appears to be the only State in which a misdemeanor could receive such a severe sentence." *Id.* Nevertheless, he concluded that the issue should first be addressed by a lower federal court or the California Supreme Court, stating that Riggs could assert his claim in a petition for a writ of habeas corpus "since [he] is asking us to apply a settled rule of Eighth Amendment law." *Id.* at 892. Justice Breyer wrote separately, agreeing with Justice Stevens that Riggs raised a "serious question" but dissenting from the denial of certiorari. *Id.*

years). Cal.Penal Code §§ 667(e)(2)(A), 1170.12(c)(2)(A).

In addition to the fact that the triggering felony need not be "serious" or "violent," several other features of California's Three Strikes law combine to make it particularly severe. First, a defendant may be considered to have two prior strikes even though he was convicted of both qualifying offenses in a single judicial proceeding. *People v. Askey*, 49 Cal.App.4th 381, 56 Cal.Rptr.2d 782, 785 (Ct.App.1996). Second, prior strikes need not be violent offenses as long as they qualify as "serious" (e.g., a residential burglary where the burglar was unarmed and residents were not home would be considered a prior strike). Cal.Penal Code §§ 1192.7(c)(18), 460(a). Third, "serious" or "violent" felony convictions imposed prior to the law's enactment in 1994 can be charged as strikes, *People v. Kinsey*, 40 Cal.App.4th 1621, 47 Cal.Rptr.2d 769, 775 (Ct.App.1995), as may a defendant's equivalent convictions received in another jurisdiction, California Penal Code §§ 667(d)(2), 1170.12(b)(2), and certain convictions a defendant received as a juvenile, California Penal Code §§ 667(d)(3), 1170.12(b)(3). Fourth, there is no "washout" period after which prior qualifying convictions will no longer be counted as strikes.[2] *People v. Martinez*, 71 Cal.App.4th 1502, 84 Cal.Rptr.2d 638, 646 & n. 9 (Ct.App.1999) (citing Cal.Penal Code § 1170.12(a)(3)). Fifth, defendants with prior strikes who are convicted of current multiple felonies committed on different occasions must serve consecutive sentences. Cal.Penal Code §§ 667(c)(6), 1170.12(a)(6); *People v. Ingram*, 40 Cal. App.4th 1397, 48 Cal.Rptr.2d 256, 264 (Ct. App.1995) ("Since each felony. count of which defendant currently stands convicted arises from separate residential burglaries, the mandatory minimum term of 25 years to life must be imposed consecutively for each count, for a minimum ... term of 50 years."), *disapproved on other grounds by People v. Dotson*, 16 Cal.4th 547, 66 Cal.Rptr.2d 423, 941 P.2d 56, 63 (1997). Finally, a defendant sentenced to an indeterminate life sentence will not be eligible for parole until he has served his entire mandatory minimum term. *Cervera*, 103 Cal.Rptr.2d 762, 16 P.3d at 181 (holding that a third-strike defendant's mandatory minimum term of 25 years may not be reduced with good-time credits).

## B. Facts And Procedural History

According to the probation officer's presentence report, Andrade is a longtime heroin addict with a history of convictions for non-violent offenses. The report indicates that Andrade was convicted in 1982 of a misdemeanor theft offense, for which he served six days in county jail and received twelve months of probation.[3] In 1983, Andrade pled guilty in a consolidated proceeding to three counts of first degree burglary (residential burglary) in violation of California Penal Code § 459.[4] In 1988,

---

**2.** The California Supreme Court has held, however, that judges have reviewable discretion to not consider, in the interest of justice, an otherwise qualifying conviction as a strike. *People v. Superior Court (Romero)*, 13 Cal.4th 497, 53 Cal.Rptr.2d 789, 917 P.2d 628, 647 (1996).

**3.** Without explanation, the State excludes Andrade's 1982 misdemeanor conviction in its recounting of his criminal history. We include it here because it appears in the presen-

tence report upon which the sentencing court presumably relied. The report also shows that Andrade was sentenced to drug diversion at the same time as this misdemeanor conviction.

**4.** The presentence report indicates that Andrade pled guilty to six, not three, counts of first-degree burglary. Both the trial court and the state court of appeal, as well as the State in its briefs, however, indicated that

Andrade was convicted in federal court of "transportation of marijuana," a felony. In 1990, Andrade was convicted in state court for a petty theft offense. Later that year, he was again convicted in federal court of another felony charge of "transportation of marijuana." Finally, in 1991, Andrade received a parole violation for escape from federal prison.[5] All told, Andrade had been convicted of five felonies and two misdemeanors—all non-violent—prior to his current convictions.

On November 4, 1995, Andrade exited a K–Mart store with five videotapes, worth $84.70, stuffed inside his pants. Two weeks later, he shoplifted another four videotapes, worth $68.84, from a different K–Mart store. In both instances, store personnel stopped Andrade as he exited the store and recovered the merchandise.

California classifies both of these offenses as petty theft, a misdemeanor punishable by up to six months in county jail and up to a $1,000 fine. Cal.Penal Code § 490; *see also* Cal.Penal Code § 487 (defining grand theft as theft over $400). Because Andrade had a previous misdemeanor theft conviction in 1990, however, his shoplifting offenses were charged as two counts of petty theft with a prior, pursuant to California Penal Code § 666. Petty theft with a prior is a so-called "wobbler" offense, punishable either as a misdemeanor with up to one year in county jail or as a felony with up to three years in state prison. Cal.Penal Code § 666 ("punishable by imprisonment in the county jail not exceeding one year, or in the state prison"); Cal.Penal Code § 18 (specifying sentences of "16 months, or two or three years" for any crime "punishable by imprisonment in a state prison" where no other penalty is specified by law); *Terry*, 54 Cal.Rptr.2d at 770–71. Prosecutors have discretion to charge petty theft with a prior as either a misdemeanor or a felony, and the trial court has reviewable discretion to reduce this charge to a misdemeanor at the time of sentencing. *People v. Superior Court (Alvarez)*, 14 Cal.4th 968, 60 Cal.Rptr.2d 93, 928 P.2d 1171 (1997) (holding that a trial court's discretion under Cal.Penal Code § 17(b) to reduce a "wobbler" offense is not eliminated by the Three Strikes law but is reviewable).

In Andrade's case, the prosecutor elected to charge his two petty thefts with a prior as felonies, thereby implicating the Three Strikes law. Andrade's three 1983 burglary convictions were charged as his first two strikes. His petty thefts were charged as his third and fourth strikes.

The trial court bifurcated Andrade's trial. In the first proceeding, the jury found him guilty of two counts of petty theft with a prior under California Penal Code § 666. Before the jury's verdict, the court denied Andrade's motions to reduce the charges to misdemeanors and to strike the prior convictions. In the second proceeding, the same jury found that he had been convicted of three counts of first degree residential burglary on April 26, 1983. On April 24, 1996, the court sentenced Andrade to 25 years to life for each petty theft with a prior conviction, to be served consecutively as required by the Three Strikes law. Cal.Penal Code §§ 667(c)(6), 1170.12(a)(6).

Andrade had been convicted of only three burglaries. We assume likewise.

5. The presentence report indicates that Andrade was sentenced to eight years for his 1988 federal conviction and 2,191 days (six years) for his 1990 federal conviction. It appears from the report, however, that Andrade served less than one and one-half years for the 1988 conviction and less than two and one-half years for the 1990 conviction. The report offers no explanation for this nor does it provide any further details about these offenses.

Andrade will not become eligible for parole until 2046, after serving 50 years; he will be 87 years old.

Andrade appealed to the California Court of Appeal, which affirmed his conviction and sentence on May 13, 1997. In an unpublished opinion, the court rejected, among other arguments, Andrade's claim that his sentence was cruel and unusual under the Eighth Amendment. The California Supreme Court denied Andrade's petition for review without comment.

Subsequently, Andrade filed a timely pro se petition for a writ of habeas corpus in federal district court under 28 U.S.C. § 2254. He raised several constitutional issues, including violation of his Eighth Amendment right. The district court denied his petition in a two-sentence order adopting the magistrate judge's Report and Recommendation which stated that "the state court['s] conclusions ... were reasonable applications of federal law." The district court entered judgment on February 19, 1999.

On March 17, 1999 (25 days later), Andrade deposited in the prison mail system a Motion for Order Extending Time for Appeal, in which he requested a 60-day extension of time to file his notice of appeal. In a supporting declaration, Andrade explained that he needed the extra time to conduct research in the prison library, to which he was permitted access for only two hours each Friday and Saturday.

In a memorandum order, the district court denied Andrade's motion, stating in relevant part:

In his Motion, petitioner claims that he has been denied adequate access to the prison law library to prepare his notice of appeal. [citation omitted] This court is not persuaded by petitioner's argument. He has not met the standard under Fed. R.App. P. 4(a)(5) to warrant an exten-

sion of time. Accordingly, petitioner's Motion is denied.

On April 11, 1999 (50 days after the district court entered its judgment), Andrade deposited a Notice of Appeal in the prison mail system. Subsequently, the district court entered an order denying Andrade a certificate of appealability.

We granted Andrade a certificate of appealability to raise his Eighth Amendment claim. Although Andrade initially filed his appeal pro se, we appointed counsel and ordered supplemental briefing.

## II. JURISDICTION

■ We must consider as a threshold matter whether we have jurisdiction over this appeal. A timely notice of appeal is mandatory and jurisdictional. Fed. R.App. P. 3(a); *Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 264, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978); *Vahan v. Shalala*, 30 F.3d 102, 103 (9th Cir.1994). Rule 4(a)(1)(A) requires that a notice of appeal be filed within 30 days after the district court enters judgment where, as here, the United States is not a party. The district court may extend this period if "(i) a party so moves no later than 30 days after the time prescribed by [ ] Rule 4(a)[ (1) ] expires" and "(ii) that party shows excusable neglect or good cause." Fed. R.App. P. 4(a)(5)(A); *see also Vahan*, 30 F.3d at 103. Such an extension, however, is limited to 30 days after the time prescribed by Rule 4(a)(1) or 10 days after the district court order granting the party's motion, whichever is later. Fed. R.App. P. 4(a)(5)(C).

■ Andrade did not file a notice of appeal until April 11, 1999, 50 days after the district court entered judgment. He did file, however, pursuant to Rule 4(a)(5)(A), a motion for extension of time on March 17, within 30 days of entry of the

district court judgment.[6] Although the district court denied the motion, Andrade asserts that his motion for extension of time was the functional equivalent of a notice of appeal. We agree.

We have previously held that a motion for extension of time may not be construed as a notice of appeal. *Selph v. Council of City of Los Angeles*, 593 F.2d 881, 883 (9th Cir.1979), *overruled on other grounds by United Artists Corp. v. La Cage Aux Folles, Inc.*, 771 F.2d 1265 (9th Cir.1985). In so deciding, we distinguished the case from "those few criminal appeals or collateral attacks on criminal convictions ... in which extraordinary relief has been granted." *Id.* (citing *United States v. Hoye*, 548 F.2d 1271, 1273 (6th Cir.1977) (treating a motion for enlargement of time containing "most of the essential facts required of a notice of appeal" as a timely notice of appeal)). The present appeal is distinguishable from *Selph* in two ways: (1) unlike the appellants in *Selph*, Andrade was proceeding pro se at the time he filed his motion for extension of time; and (2) Andrade's suit is a collateral attack on his criminal conviction.

More importantly, we must reexamine our holding in *Selph* in light of the Supreme Court's decision in *Smith v. Barry*, 502 U.S. 244, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992). In *Smith*, the Supreme Court held that a document intended to serve as an appellate brief may qualify as the notice of appeal required by Rule 3. *Id.* at 248–49, 112 S.Ct. 678. The Court stated:

> While a notice of appeal must specifically indicate the litigant's intent to seek appellate review, the purpose of this requirement is to ensure that the filing provides sufficient notice to other parties and the courts. Thus, the notice afforded by a document, not the litigant's motivation in filing it, determines the document's sufficiency as a notice of appeal. If a document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is effective as a notice of appeal.

*Id.* (internal citations omitted). The Court also noted that Rule 3's requirements should be liberally construed, although noncompliance will still be fatal to an appeal. *Id.* at 248, 112 S.Ct. 678.

Two of our sister circuits have relied on *Smith v. Barry* to hold that a timely motion for extension of time may qualify as a notice of appeal. *United States v. Smith*, 182 F.3d 733, 735–36 (10th Cir.1999); *Listenbee v. City of Milwaukee*, 976 F.2d 348, 349–51 (7th Cir.1992).[7] Prior to the Supreme Court's decision in *Smith v. Barry*, the Tenth Circuit had held to the contrary. *Longstreth v. City of Tulsa*, 948 F.2d 1193, 1194 (10th Cir.1991) ("[A]sking for more time in which to file an appeal indicates

---

**6.** In its order denying Andrade's request for an extension of time, the district court mistakenly used March 25, 1999 as the date Andrade filed his motion. The clerk's stamp on Andrade's motion indicates that the district court received his motion on March 18. Moreover, a notice of appeal by an inmate confined in an institution will be considered timely if it is deposited in the institution's internal mail system with proper postage on or before the last day of filing. Fed. R.App. P. 4(c)(1); *see also Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). Andrade's supporting declaration indicates that he accomplished this task on March 17.

**7.** Prior to the Supreme Court's decision in *Smith v. Barry*, the Sixth Circuit had already held that a timely motion for extension of time may be treated as a notice of appeal, at least in cases involving a direct or collateral appeal from a criminal conviction. *United States v. Christoph*, 904 F.2d 1036, 1040 (6th Cir.1990), *superceded by statute on other grounds, as recognized in United States v. Williams*, 940 F.2d 176, 181 n. 3 (6th Cir. 1991); *Hoye*, 548 F.2d at 1273.

uncertainty as to whether one will file an appeal and compels the conclusion that the notice of appeal is something yet to be filed."). In *United States v. Smith*, however, the Tenth Circuit departed from its previous rule by explaining that *Smith v. Barry* had modified the intent requirement by shifting the emphasis to " 'the notice afforded by a document, not the litigant's motivation in filing it. . . .' " 182 F.3d at 735 (quoting *Smith v. Barry*, 502 U.S. at 248–49, 112 S.Ct. 678). It explained that the relevant question is whether a motion gave notice of the three elements required by Rule 3: " 'the party or parties taking the appeal by naming each one in the caption or body of the notice'; 'the judgment, order or part thereof appealed from'; and the 'court to which the appeal is taken.' " *Id.* (quoting Rule 3(c)(1)). The court concluded by holding that the appellant's "Motion for Out of Time Notice of Appeal" satisfied these elements, was filed within the allowable time, and thus was the functional equivalent of a notice of appeal. *Id.* at 735–36.[8]

▪ We find the Tenth Circuit's reasoning persuasive and join it, along with the Sixth and Seventh Circuits, in holding that a timely motion for extension of time to file a notice of appeal may be considered the functional equivalent of a notice of appeal provided it gives notice of the three elements required by Rule 3(c)(1). Andrade's declaration in support of his motion for extension of time states: "Leandro

Andrade respectfully requests . . . an additional 60 days in which to file his notice of appeal." While this language does not preclude the possibility that Andrade may have elected not to appeal, we conclude that to require more explicit language conflicts with the Supreme Court's instruction that we liberally construe Rule 3's requirements. *Smith v. Barry*, 502 U.S. at 248, 112 S.Ct. 678. Andrade's motion for extension of time satisfied the three notice requirements of Rule 3(c)(1): it identified the judgment at issue, it specified the court to which the appeal would be taken, and it was delivered to both the district court and the opposing party. Moreover, Andrade filed it within 30 days of the entry of the district court judgment, thus satisfying the timeliness requirements of Rule 4(a)(1)(A). Because we conclude that Andrade's motion is the functional equivalent of a timely notice of appeal, we have jurisdiction to review this appeal. To the extent that our decision in *Selph* dictates otherwise, it is overruled in light of the Supreme Court's decision in *Smith v. Barry*, 502 U.S. 244, 112 S.Ct. 678, 116 L.Ed.2d 678. *United States v. Gay*, 967 F.2d 322, 327 (9th Cir.1992) (noting that a three-judge panel may overrule the decision of a prior panel " 'when an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point' ") (quoting *United States v. Lancellotti*, 761 F.2d 1363, 1366 (9th Cir.1985)).[9]

---

8. The Eleventh Circuit has concluded otherwise. After *Smith v. Barry*, it held that a motion for extension of time cannot be the functional equivalent of a notice of appeal unless "it is objectively clear [from the motion] that a party intends to appeal." *Compare Rinaldo v. Corbett*, 256 F.3d 1276, 1279–80 (11th Cir.2001) (holding that a motion for extension of time is the functional equivalent of a notice of appeal where the party "specifically states that 'Plaintiff . . . gives Court notice that he intends to appeal' "), *with Harris*

*v. Ballard*, 158 F.3d 1164 (11th Cir.1998) (holding that a motion for extension of time is not the functional equivalent of a notice of appeal where there is uncertainty as to whether the party will in fact appeal). *See also Haugen v. Nassau County Dep't of Soc. Servs.*, 171 F.3d 136, 138 (2d Cir.1999) (holding that a motion for extension of time is the functional equivalent of a notice of appeal where appellants stated they "will appeal" the judgment).

## III. STANDARD OF REVIEW

■ We review de novo a district court's decision to grant or deny a 28 U.S.C. § 2254 habeas petition. *Bribiesca v. Galaza*, 215 F.3d 1015, 1018 (9th Cir. 2000).

Because Andrade filed his petition on August 19, 1998, we review his petition under the provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996) ("AEDPA"). *Van Tran v. Lindsey*, 212 F.3d 1143, 1148 (9th Cir.2000). "Under AEDPA, we may reverse a state court's decision denying relief only if that decision is 'contrary to, or involves an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.'" *Id.* at 1149 (quoting 28 U.S.C. § 2254(d)(1)).

■ We determine de novo what is "clearly established federal law, as determined by the Supreme Court of the United States." *LaJoie v. Thompson*, 217 F.3d 663, 668 (9th Cir.2000) (internal citation and quotation marks omitted). If the federal law is not clearly established at the time of the state court determination, § 2254(d)(1) bars relief. *Vasquez v. Strack*, 228 F.3d 143, 148–49 (2d Cir.2000), *cert. denied*, 531 U.S. 1166, 121 S.Ct. 1128, 148 L.Ed.2d 994 (2001).

Justice O'Connor addressed the distinction between the "contrary to" and "an unreasonable application of" provisions of § 2254(d)(1) in *Williams v. Taylor*, 529 U.S. 362, 405–09, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In *Van Tran*, we summarized her analysis:

A state court's decision can be "contrary to" federal law either 1) if it fails to apply the correct controlling authority, or 2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. A state court's decision can involve an "unreasonable application" of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.

212 F.3d at 1150 (internal citation omitted). We noted that the two concepts overlap and that it sometimes will be necessary to apply both standards. *Id.*

■ "[W]hen analyzing a claim that there has been an unreasonable application of federal law, we must first consider whether the state court erred; only after we have made that determination may we then consider whether any error involved an unreasonable application of controlling law within the meaning of § 2254(d)." *Id.* at 1155. We will find an "unreasonable application" only when our independent review of the legal question "leaves us with a 'firm conviction' that one answer, the one rejected by the [state] court, was correct and the other, the application of the federal law that the [state] court adopted, was erroneous—in other words that clear error occurred." *Id.* at 1153–54.

## IV. EIGHTH AMENDMENT

■ The Eighth Amendment to the United States Constitution provides that

9. Because we find that Andrade's motion for extension of time was the functional equivalent of a timely notice of appeal, we need not address his argument that the district court abused its discretion by denying his motion for extension of time without a proper analysis of excusable neglect.

there "shall not be ... cruel and unusual punishments inflicted."[10] At issue here is whether this amendment proscribes a sentence of 50 years to life for two shoplifting offenses involving nine videotapes worth a total of $153.54 by a defendant with several previous convictions for non-violent offenses. The California Court of Appeal, in its 1997 decision affirming Andrade's conviction, concluded that it did not.

■ The constitutionality of life sentences for non-violent recidivists is controlled by several decisions rendered by the Supreme Court in the two decades prior to the state court's decision. In *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), the Court upheld a sentence of life in prison *with* the possibility of parole for a three-time non-violent felony recidivist. Three years later, in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Court reversed a sentence of life in prison *without* the possibility of parole for a seven-time non-violent felony recidivist. Finally, in *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), a decision without a majority opinion, Justice Kennedy, writing for himself and two other justices, reconciled the Court's prior decisions in *Rummel* and *Solem* and articulated a revised test. Under this test, the "Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001, 111 S.Ct. 2680 (Kennedy, J., concurring) (quoting *Solem*, 463 U.S. at 288, 303, 103 S.Ct. 3001). Our circuit and others regard Justice Kennedy's test as "the rule of *Harmelin*" be-

cause it is the "position taken by those Members who concurred in the judgment[ ] on the narrowest grounds...." *United States v. Bland*, 961 F.2d 123, 128–29 (9th Cir.1992) (internal citation and quotation marks omitted); *see also Henderson v. Norris*, 258 F.3d 706, 709 (8th Cir.2001) ("Since *Harmelin*, our courts and others have applied the principles outlined in Mr. Justice Kennedy's opinion to [Eighth Amendment] cases...."); *United States v. Jones*, 213 F.3d 1253, 1261 (10th Cir. 2000) ("We have ruled that Justice Kennedy's plurality opinion ... sets forth the applicable Eighth Amendment test."); *United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir.1998) ("Our court follows the narrow proportionality rule established by Justice Kennedy's concurrence in *Harmelin* ....").

**A. Review of Supreme Court Case Law**

Understanding the test articulated by Justice Kennedy's concurrence requires that we first review the Court's decisions in *Rummel* and *Solem*.

In *Rummel*, the Supreme Court upheld a sentence of life imprisonment *with* the possibility of parole for a three-time non-violent felony recidivist. Rummel was sentenced under a Texas recidivist statute which provided that "[w]hoever shall have been three times convicted of a felony less than capital shall on the third conviction be imprisoned for life in the penitentiary." *Rummel*, 445 U.S. at 264, 100 S.Ct. 1133 (citing Tex. Penal Code Ann. § 12.42(d) (1974)). Rummel's two prior felonies were (1) a 1964 conviction for fraudulent use of a credit card to obtain $80 worth of goods

---

**10.** The Eighth Amendment "applies against the States by virtue of the Fourteenth Amendment." *Harmelin v. Michigan*, 501 U.S. 957, 962, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (opinion of Justice Scalia, joined by Chief Justice Rehnquist) (citing *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962)).

or services;[11] and (2) a 1969 conviction for passing a forged check for $28.36.[12] In 1973, Rummel received his third conviction for obtaining $120.75 by false pretenses, an offense normally punishable by imprisonment for two to ten years. Because Rummel had two prior felony convictions, however, the prosecution elected to proceed under the recidivist statute, which carried a life sentence. *Id.* at 266, 100 S.Ct. 1133.

Several factors influenced the Court's holding that Rummel's sentence did not violate the Eighth Amendment. First, the Court emphasized that the Texas statute required separate convictions and terms of imprisonment for each felony, such that a defendant must twice be convicted and twice serve time in prison before being eligible for a life sentence on his third conviction. *Id.* at 278, 100 S.Ct. 1133. Second, the Court noted that it could not ignore the fact that under Texas' liberal parole policy Rummel would be eligible for parole in as few as twelve years. *Id.* at 280–81, 100 S.Ct. 1133. Third, the Court stressed that prosecutors retained discretion to plea bargain or not invoke the recidivist statute "so as to screen out truly 'petty' offenders who fall within the literal terms of" the statute. *Id.* at 281, 100 S.Ct. 1133.

In *Solem*, the Supreme Court affirmed a decision of the Eighth Circuit holding unconstitutional a sentence of life imprisonment *without* the possibility of parole for a seven-time non-violent felony recidivist. The defendant Helm was sentenced under a South Dakota recidivist statute that provided for a maximum penalty of life imprisonment without parole and a $25,000 fine for a defendant who had "at least three prior convictions [*sic* ] in addition to the principal felony." 463 U.S. at 281, 103 S.Ct. 3001 (citing S.D. Codified Laws § 22–7–8 (1979)) (alteration in original). Helm had six prior felonies: three convictions for third-degree burglary, one in 1964, another in 1966, and the third in 1969;[13] a fourth conviction in 1972 for obtaining money under false pretenses;[14] a fifth conviction in 1973 for grand larceny;[15] and a sixth conviction in 1975 for third-offense driving while intoxicated. *Id.* at 279–80, 103 S.Ct. 3001. In 1979, when Helm was convicted of his seventh felony for uttering a "no account" check for $100, the county prosecutor sought a life sentence under the state's recidivist statute. *Id.* at 281, 103 S.Ct. 3001. Ordinarily, the maximum punishment for this felony would have been five years in the state penitentiary and a $5,000 fine, but under South Dakota's recidivist statute, Helm was sentenced to life in prison without the possibility of parole. *Id.*

The Court held that proportionality analysis under the Eighth Amendment applied to terms of imprisonment just as it applied to capital sentences and fines, although it noted that successful challenges

11. This was a felony because it involved an amount of more than $50. The offense was punishable by a sentence of two to ten years in prison. Rummel was sentenced to three years. *Id.* at 265, 100 S.Ct. 1133.

12. This was a felony punishable by two to five years in prison. Rummel was sentenced to four years. *Id.* at 265–66, 100 S.Ct. 1133.

13. Third-degree burglary was punishable by up to fifteen years in the state penitentiary. *Id.* at 280 n. 1, 100 S.Ct. 1133.

14. Obtaining money under false pretenses was punishable by up to three years in the state penitentiary. *Id.* at 280 n. 2, 100 S.Ct. 1133.

15. Grand larceny was defined as the taking of property of a value exceeding $50, taking property of a value less than $50 from the person of another, or taking livestock. It was punishable by up to ten years in the state penitentiary. *Id.* at 280 n. 3, 100 S.Ct. 1133.

to the former would be "'exceedingly rare.'" *Id.* at 289–90, 103 S.Ct. 3001 (citing *Rummel*, 445 U.S. at 272, 100 S.Ct. 1133). The Court emphasized that legislatures' "broad authority" to determine appropriate punishments was entitled to "substantial deference." *Id.* at 290, 103 S.Ct. 3001. At the same time, no penalty was per se constitutional under the Eighth Amendment. *Id.* The Court stated that "no single criterion can identify when a sentence is so grossly disproportionate that it violates the Eighth Amendment." *Id.* at 291 n. 17, 103 S.Ct. 3001. Instead, it established three objective criteria to guide proportionality analysis under the Eighth Amendment: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 292, 103 S.Ct. 3001.[16]

Applying the three criteria, the Court concluded that Helm's sentence was grossly disproportionate to his crime of uttering a "no account" check for $100, even in light of his prior six non-violent felony convictions.[17] *Id.* at 289–90, 303, 103 S.Ct. 3001. The Court emphasized that Helm's life sentence "[wa]s far more severe than the life sentence we considered in *Rummel*" because Rummel was likely eligible for parole in 12 years while Helm was given no possibility of parole at all. *Id.* at 297, 103 S.Ct. 3001.[18]

In 1991, the Supreme Court revisited *Solem* and *Rummel* in *Harmelin*, a case involving a defendant's Eighth Amendment challenge to his mandatory sentence under Michigan's drug laws of life in prison *without* the possibility of parole for possession of more than 650 grams of cocaine, his first felony offense. *Harmelin*, 501 U.S. at 961, 111 S.Ct. 2680. The Court upheld Harmelin's sentence with five justices agreeing that it did not violate the Eighth Amendment, although for different reasons. Justice Scalia, joined only by Chief Justice Rehnquist, concluded that the decision in *Solem* was "simply wrong: the Eighth Amendment contains no proportionality guarantee." *Id.* at 965, 111 S.Ct. 2680. Justice Kennedy, joined by Justices O'Connor and Souter, stated that a non-capital sentence could violate the Eighth Amendment if it was grossly disproportionate to the crime but that Harmelin did not meet this standard. *Id.* at 996–1009, 111 S.Ct. 2680. Justices White, Blackmun, Stevens, and Marshall dissented, arguing that the Court should not depart from the three-factor test articulated in *Solem* and that a life sentence without parole was unconstitutionally dis-

---

**16.** In evaluating the seriousness of the underlying crime, the *Solem* Court noted that some norms are easily applied, such as non-violent crimes are less serious than violent crimes, the more that is stolen the more serious the offense, lessor included offenses are less serious than the greater offense, and attempts and accessories are less culpable than actual commissions and principals. *Id.* at 292–93, 103 S.Ct. 3001.

**17.** Justice Powell's majority opinion in *Solem* used "grossly disproportionate" and "significantly disproportionate" interchangeably. *See, e.g., id.* at 284, 288, 291 n. 17, 103 S.Ct. 3001 (using "grossly disproportionate") and

at 303, 103 S.Ct. 3001 (using "significantly disproportionate"). Justice Kennedy's concurrence in *Harmelin* cited *Solem*, 463 U.S. at 288, 303, 103 S.Ct. 3001, for the "grossly disproportionate" standard. 501 U.S. at 1001, 111 S.Ct. 2680.

**18.** The Court rejected the State's argument that it should consider the possibility that the governor could commute Helm's sentence to a term of years because while parole was a "regular part of the rehabilitative process," commutation was an "ad hoc exercise of executive clemency" *Id.* at 300–03, 100 S.Ct. 1133.

proportionate to Harmelin's crime. *Id.* at 1009–29, 111 S.Ct. 2680.

Although the Court did not produce a majority opinion, seven justices favored some manner of proportionality review. As noted earlier, we and other circuits treat the test articulated by Justice Kennedy as "the rule of *Harmelin.*" *Bland,* 961 F.2d at 129 (internal citation and quotation marks omitted); *see also Henderson,* 258 F.3d at 709; *Jones,* 213 F.3d at 1261; *Harris,* 154 F.3d at 1084.

Justice Kennedy's concurrence did not challenge the central holding of *Solem* that a grossly disproportionate sentence of imprisonment violates the Eighth Amendment. *Harmelin,* 501 U.S. at 1001, 111 S.Ct. 2680 (citing *Solem,* 463 U.S. at 288, 303, 103 S.Ct. 3001). Nor did Justice Kennedy question the *Solem* majority's conclusion that Solem's sentence of life imprisonment without the possibility of parole for uttering a no account check was grossly disproportionate, given the " 'relatively minor' " nature of Solem's offenses. *Id.* at 1002, 111 S.Ct. 2680 (quoting *Solem,* 463 U.S. at 296–97, 103 S.Ct. 3001). Rather, Justice Kennedy emphasized several points also made by the *Solem* majority. *Id.* at 998, 111 S.Ct. 2680 (stating that "close analysis of our decisions [in *Rummel* and *Solem* ] yields some common principles that give content to the uses and limits of proportionality review"). These principles include the following: (1) courts should accord "substantial deference" to legislative determinations of appropriate punishments, *id.* at 998–99, 111 S.Ct. 2680 (citing *Solem,* 463 U.S. at 290, 103 S.Ct. 3001); (2) the Eighth Amendment does not require that legislatures adopt any particular penological theory, *id.* at 999, 111 S.Ct. 2680, a point implicit in the *Solem* Court's conclusion that legislatures are entitled to "substantial deference;" (3) divergences in theories of sentencing and the length of

prison terms are "inevitable" in our federalist system, *id.* at 999, 111 S.Ct. 2680 (citing *Solem,* 463 U.S. at 291 n. 17, 103 S.Ct. 3001); (4) proportionality reviews should be informed by objective factors, *id.* at 1000, 111 S.Ct. 2680 (citing *Solem,* 463 U.S. at 290, 103 S.Ct. 3001); and (5) "the Eighth Amendment does not require strict proportionality between crime and sentence" but "[r]ather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime," *id.* at 1001, 111 S.Ct. 2680 (citing *Solem,* 463 U.S. at 288, 303, 103 S.Ct. 3001).

Relying on these "common principles," Justice Kennedy concluded that courts need not examine the second and third factors specified in *Solem*—the intrajurisdictional and interjurisdictional reviews— unless a "threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1005, 111 S.Ct. 2680. While Justice White in his *Harmelin* dissent considered this "an abandonment of the second and third factors set forth in *Solem,*" *id.* at 1020, 111 S.Ct. 2680, Justice Kennedy argued that it was consistent with the *Solem* Court's "admonition that 'a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate,' " *id.* at 1004, 111 S.Ct. 2680 (citing *Solem,* 463 U.S. at 290 n. 16, 103 S.Ct. 3001).

The means by which Justice Kennedy decided that Harmelin's sentence did not violate the Eighth Amendment demonstrates the conformity between his proportionality analysis and that articulated by the *Solem* Court. Rather than emphasizing a different analytical framework, Justice Kennedy based his analysis on the more serious nature of Harmelin's offense. Justice Kennedy stressed that Harmelin's offense "threatened to cause grave harm

to society" unlike "the relatively minor, nonviolent crime at issue in *Solem.*" *Id.* at 1002, 111 S.Ct. 2680. Justice Kennedy further noted that the "[p]ossession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population'" and that the quantity of cocaine that Harmelin possessed had "a potential yield of between 32,500 and 65,000 doses." *Id.* at 1002, 111 S.Ct. 2680 (internal citations omitted). Thus, in concluding that Harmelin's sentence did not raise an inference of gross disproportionality, Justice Kennedy did not suggest, implicitly or explicitly, that his analysis would have led to a different outcome in *Solem.* Accordingly, we conclude that *Solem* remains good law after *Harmelin,* recognizing that we need not consider *Solem*'s second and third factors if we conclude under the first factor that a defendant's sentence does not raise an inference of gross disproportionality to the crime. *Id.* at 1005, 111 S.Ct. 2680 ("This conclusion neither 'eviscerate[s]' *Solem,* nor 'abandon[s]' its second and third factors, as the dissent charges...."). *See also Henderson,* 258 F.3d 706 (citing *Solem* throughout the opinion for binding points of law).

## B. Application of Supreme Court Case Law

Following the revised three-factor test, we first compare Andrade's punishment to his crimes. Because this comparison leads to an "inference of gross disproportionality," we then proceed to compare Andrade's sentence to sentences imposed for other crimes in California and then to sentences imposed for similar crimes in other jurisdictions.

### 1. Comparison of Punishment and Crime

#### a. Harshness of the Penalty

Andrade was sentenced to two consecutive indeterminate sentences of 25 years to life in prison. Because of a unique feature of the Three Strikes law, the sentencing judge had no discretion to impose the sentences concurrently. Cal.Penal Code §§ 667(c)(6), 1170.12(a)(6); *Ingram,* 48 Cal.Rptr.2d at 264.[19] Unlike most sentences imposed under California's sentencing laws, Andrade's minimum three-strikes term may not be reduced by credit for good behavior or working while in prison. *Cervera,* 103 Cal.Rptr.2d 762, 16 P.3d at 181. Andrade therefore must serve a minimum of 50 years in prison before he is eligible for parole.

The unavailability of parole for a half century makes Andrade's sentence substantially more severe than the life sentence at issue in *Rummel.* There, Rummel was eligible for parole in as few as 12 years. In contrast, Andrade must serve more than four times the length of Rummel's sentence before he becomes eligible for parole. *See also Smallwood v. John-*

---

**19.** The dissent stresses the fact that Andrade's sentence is for two offenses rather than one. There is no dispute that Andrade was convicted of two petty theft offenses with a prior. However, as noted above, California's Three Strikes law precluded the trial judge from exercising any sentencing discretion; the court was required to impose consecutive sentences. The cases cited by the dissent are distinguishable, as it does not appear in these cases that the sentencing judge or official was required to impose consecutive sentences.

*Hawkins v. Hargett,* 200 F.3d 1279, 1280 (10th Cir.1999) ("The trial judge ordered that the[ ] sentences be served consecutively...."); *United States v. Aiello,* 864 F.2d 257, 262 (2d Cir.1988) ("The district court did not abuse its substantial discretion in choosing an appropriate sentence."); *see also Pearson v. Ramos,* 237 F.3d 881, 886 (7th Cir. 2001) (explaining that the Superintendent imposed consecutive "sentences" denying yard privileges to a prisoner, a sanction "authorized by state law").

*son,* 73 F.3d 1343, 1346, 1352 (5th Cir.1996) (upholding a 50–year sentence for a nonviolent recidivist only after noting that the defendant would be eligible for parole within 12 years); *Hawkins,* 200 F.3d at 1284 (stating that the availability of parole is relevant to determining whether the length of the sentence violates the Eighth Amendment).

Indeed, Andrade's sentence is the functional equivalent of the sentences at issue in *Solem* and *Harmelin*—life in prison without the possibility of parole. A "life sentence without parole is the second most severe penalty permitted by law," *Harmelin,* 501 U.S. at 1001, 111 S.Ct. 2680, and is the same sentence that the Supreme Court held unconstitutional when imposed on a seven-time felony recidivist in *Solem.* Andrade was 37 years old at the time of his sentencing and will be 87 years old when he is first eligible for parole. The life expectancy of a 37–year–old American male is 77 years. National Center for Health Statistics, Center for Disease Control and Prevention, *National Vital Statics Reports* at Table 2, Vol. 47, No. 28 (Dec. 13, 1999). It is thus more likely than not that Andrade will spend the remainder of his life in prison without ever becoming eligible for parole.

### b. Gravity of the Offense

▮ As *Harmelin* makes clear, simply because a sentence is harsh does not mean that it is disproportionate to the crime. We examine the punishment in light of the gravity of the offense. We also recognize that a "State is justified in punishing a recidivist more severely than it punishes a first offender." *Solem,* 463 U.S. at 296, 103 S.Ct. 3001. But "the enhanced punishment imposed for the [present] offense 'is not to be viewed as ... [an] additional penalty for the earlier crimes,' but instead as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'" *Witte v. United States,* 515 U.S. 389, 400, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (quoting *Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948)); *see also Solem,* 463 U.S. at 297 n. 21, 103 S.Ct. 3001 ("We must focus on the principal felony—the felony that triggers the life sentence—since [the defendant] already has paid the penalty for each of his prior offenses. But we recognize, of course, that [the defendant]'s prior convictions are relevant to the sentencing decision.").

Andrade's present convictions are for two counts of petty theft with a prior for shoplifting videotapes on two different occasions with a total value of $153.54. Petty theft is similar in many respects to the defendant's crime of "uttering a no account check" in *Solem.* Both "involve[ ] neither violence nor [the] threat of violence to any person" and a relatively small amount of money. *Id.* at 296, 103 S.Ct. 3001. Additionally, both are easily distinguished from the defendant's crime in *Harmelin,* where Justice Kennedy emphasized the serious and often violent consequences of drug use and distribution and noted that Harmelin possessed enough cocaine for between 32,-500 and 65,000 doses. *Harmelin,* 501 U.S. at 1002, 111 S.Ct. 2680. Justice Kennedy distinguished Harmelin's offense from the "relatively minor, nonviolent crime at issue in *Solem,*" concluding that Harmelin's crime was "as serious and violent as the crime of felony murder without specific intent to kill...." *Id.* at 1002, 1004, 111 S.Ct. 2680. Andrade's crimes did not pose a "grave harm to society," *id.* at 1002, 111 S.Ct. 2680, and the nine videotapes he stole were recovered by store personnel as he exited the stores.

Moreover, petty theft is usually prosecuted as a misdemeanor. By classifying

such conduct as a misdemeanor, the California legislature has indicated that petty theft is regarded as a relatively minor offense. Had Andrade's videotape thefts been his first theft offenses, the maximum penalty he could have received for each theft would have been six months in county jail and a maximum $1,000 fine. Cal.Penal Code § 490. Because he had a prior theft offense, however, they were elevated to petty theft with a prior—a "wobbler" offense punishable either as a misdemeanor or felony. Cal.Penal Code § 666; *Terry,* 54 Cal.Rptr.2d at 770–71. The prosecution's decision to charge the petty thefts as felonies qualified the offenses as his third and fourth strikes. *Terry,* 54 Cal.Rptr.2d at 770–71. Thus, under a "unique quirk" in California law, Andrade's recidivism was double counted, first enhancing his misdemeanor offenses to felonies and then enhancing them again to third and fourth strikes. *Riggs,* 119 S.Ct. at 891 (Stevens, J., memorandum opinion respecting the denial of the petition for a writ of certiorari).

It is significant that the core conduct for which Andrade was sentenced is, in the first instance, classified as a misdemeanor rather than a felony. While the Supreme Court frequently defers to legislative judgments regarding the proper length of imprisonment for felony offenses, it is less clear that the same degree of deference is appropriate when extreme sentences are imposed for misdemeanor conduct. *Id.* (deference to legislative determination of punishment less pronounced when offense is not classified as a felony); *Rummel,* 445 U.S. at 274 n. 11, 100 S.Ct. 1133 (acknowledging that a proportionality analysis would be relevant to a hypothetical statute making overtime parking punishable by life imprisonment).

Of course, Andrade was sentenced as a recidivist, and the gravity of his offense cannot be assessed independently of his previous criminal conduct. According to the State, Andrade's criminal record warrants the enhanced punishment and therefore justifies its severity. Not all enhanced sentences imposed on repeat offenders are constitutional, however, as demonstrated by the *Solem* Court's decision to vacate the life sentence of a seven-time felony recidivist.

California's Three Strikes law imposes a 25–year–to–life sentence on defendants previously convicted of two or more "serious" or "violent" felonies. Cal.Penal Code §§ 667(e)(2)(A), 1170.12(c)(2)(A). Andrade's predicate "serious" felonies were three counts of residential burglary adjudicated in a single proceeding more than a decade earlier. This contrasts with the defendant in *Rummel,* who served time in prison for his first felony before being convicted and serving time for his second felony—a fact the Court found significant. *Rummel,* 445 U.S. at 278, 100 S.Ct. 1133.

As noted above, Andrade has additional offenses on his record. His prior misdemeanor petty theft from 1990 permitted his present petty theft convictions to be charged as felonies and thus to qualify as third and fourth strikes.[20] Although Andrade also has two federal convictions for transporting marijuana, they were not counted as strikes and there is no record that the court considered them when sentencing Andrade. Arguably, the federal convictions therefore should not affect our analysis as they did not affect the imposition of Andrade's 50–year–to–life sentence.

Even if we consider Andrade's entire criminal history record—five felonies, two misdemeanors, and one parole violation—it

**20.** Andrade also has the misdemeanor theft conviction from 1982, for which he served six days in jail and received twelve months of probation.

is still comparable, quantitatively and qualitatively, to that of the defendant in *Solem*. Both defendants had three burglary convictions, although only Andrade was convicted of all three in a single proceeding. All of the offenses were non-violent. Given that Andrade's sentence of 50 years to life is a sentence of life without a realistic possibility of parole, his case is most analogous to *Solem*.

#### c. Inference of Gross Disproportionality

A threshold comparison of the harshness of the penalty and the gravity of the crimes leads to an inference that Andrade's sentence was grossly disproportionate. Andrade will likely serve the remainder of his life in prison for shoplifting nine videotapes.

This inference of disproportionality is not dissipated by Andrade's prior criminal record. His prior "strikes" were non-violent burglaries, prosecuted in a single judicial proceeding, more than a decade before he was sentenced under the Three Strikes law. His other offenses, although not considered at sentencing, were also non-violent. Moreover, due to a unique quirk in California law, his recidivism was double-counted by first enhancing his misdemeanor petty theft offenses to felonies and then enhancing them to third and fourth strikes.

#### 2. *Intrajurisdictional Comparison*

An intrajurisdictional comparison is only required when a sentence presents an "inference of gross disproportionality." *Harmelin*, 501 U.S. at 1005, 111 S.Ct. 2680. Consequently, this second prong of the Eighth Amendment test is often mentioned, but seldom actually applied. *See, e.g., Cacoperdo v. Demosthenes*, 37 F.3d 504, 508 (9th Cir.1994) (concluding that a comparison of the gravity of defendant's offenses with the harshness of his sentence

did not raise an inference of gross disproportionality and, therefore, no intrajurisdictional comparison was required); *United States v. Whyte*, 892 F.2d 1170, 1176 n. 16 (3d Cir.1989) (upholding life sentence without undertaking intrajurisdictional comparison).

Where, as here, the harshness of the sentence appears grossly disproportionate to the gravity of the offense and the culpability of the offender, we must assess whether the disputed sentence is excessive when compared to "sentences imposed on other criminals in the same jurisdiction." *Solem*, 463 U.S. at 292, 103 S.Ct. 3001. *See also Harmelin*, 501 U.S. at 1005, 111 S.Ct. 2680 (Kennedy, J., concurring); *United States v. Meirovitz*, 918 F.2d 1376, 1381 (8th Cir.1990) (noting that analysis under the second prong is "rare," but appropriate where challenged sentence is life without possibility of parole).

As noted above, petty theft, if committed by a first time offender, is a misdemeanor punishable by up to six months in county jail and up to a $1,000 fine. Cal.Penal Code § 490. If a defendant has been convicted previously of a theft offense, he may be charged under California Penal Code § 666 and sentenced to up to three years in prison (or, if charged as a misdemeanor, up to one year in county jail). Cal.Penal Code §§ 18, 666. Thus, Andrade could have received a total sentence of six years in prison had he received the maximum sentences, imposed consecutively, under these provisions.

Andrade's indeterminate sentence of 50 years to life is exceeded in California only by first-degree murder and a select few violent crimes. Cal.Penal Code § 190 (first-degree murder punishable by death, life *without* parole, or 25 years to life); *id.* § 209 (kidnapping under certain circumstances punishable by life *without* parole); *id.* §§ 218 and 219 (train wrecking or de-

railing punishable by life *without* parole or, for § 219, death); *id.* § 12310 (unlawful explosion causing death, mayhem, or great bodily injury punishable by life *without* parole). Most violent crimes, however, are punished much less severely. *Id.* § 190 (second-degree murder punishable by 15 years to life under most circumstances); *id.* § 193 (voluntary manslaughter punishable by up to 11 years); *id.* § 264 (rape punishable by up to 8 years); *id.* § 288 (sexual assault on a minor punishable by up to 8 years). Andrade's sentence is grossly disproportionate when compared to the above sentences for violent crimes.

The State argues that, because Andrade is a recidivist, we must compare his sentence to those of other non-violent recidivists in California. The State then lists several examples of non-violent recidivists sentenced to harsh sentences under California's Three Strikes law. *People v. Cline*, 60 Cal.App.4th 1327, 71 Cal.Rtpr.2d 41 (Ct.App.1998) (25–year–to–life sentence for felony grand theft with twelve prior convictions for residential burglary); *People v. Goodwin*, 59 Cal.App.4th 1084, 69 Cal.Rptr.2d 576 (Ct.App.1997) (25–year–to–life sentence for commercial burglary with two prior strikes for residential burglary, plus several drug related offenses and a misdemeanor battery).

Although we agree that comparisons to sentences for other recidivists are relevant, the problem with the State's argument is that it attempts to justify the constitutionally-suspect application of a statute by pointing to other applications of the same statute. We find this approach less than convincing.

That said, Andrade's sentence is unusual even when compared to other sentences for non-violent recidivists under the Three Strikes law. Andrade's sentence is twice as long as the "comparable" sentences cited by the State. *Cline*, 60 Cal.App.4th 1327, 71 Cal.Rptr.2d 41 (25 years to life); *Goodwin*, 59 Cal.App.4th 1084, 69 Cal.Rptr.2d 576 (same). It is twice as long as the sentence in *Terry*, which upheld a third-strike conviction for petty theft with a prior. 54 Cal.Rptr.2d at 770–71 (nature of prior strikes not specified). Indeed, we have found no other published case upholding a sentence of 50 years to life in prison for a non-violent recidivist under the Three Strikes law.[21]

Our intrajurisdictional comparison of sentences in California supports the conclusion that Andrade's sentence was grossly disproportionate to his crimes and therefore proscribed by the Eighth Amendment. His sentence is significantly greater than the sentences under California law for most violent crimes. Moreover, it is unusual even when compared to other applications of the Three Strikes law.

### 3. *Interjurisdictional Comparison*

California's Three Strikes law was one of twenty-five laws with this label enacted nationwide between 1993 and 1995. John Clark et al., *"Three Strikes and You're Out": A Review of State Legislation in* National Institute of Justice, U.S. Department of Justice, *Research in Brief* at 1 (Sept.1997). Many other states have similar laws under different names which likewise punish recidivists more severely than first-time offenders. *See generally People*

---

**21.** *Ingram,* not cited by the State, held that a defendant convicted of two counts of residential burglary with two prior strikes should be sentenced to two consecutive 25–year–to–life terms. 48 Cal.Rptr.2d at 266. Unlike the instant case, however, the triggering offenses in *Ingram* were "serious" felonies and one of the defendant's prior strikes was for a violent offense (burglary at knifepoint). *Id.* at 267–68.

*v. Riggs,* No. E019488, 1997 WL 1168650, at *4 n. 2 (Cal.Ct.App.1997) (unpublished) (indicating that at least forty states have some form of recidivist statute).

Of those jurisdictions with some form of recidivist sentencing statute, the State suggests only four where Andrade's triggering offense (petty theft with a prior) could qualify for recidivist sentencing: Rhode Island, West Virginia, Texas, and Louisiana. Even in these four states, however, Andrade could not receive a sentence nearly as severe as he did under California's Three Strikes law on the basis of his two prior strikes for residential burglary. If we also consider Andrade's prior convictions not included in the calculation of his sentence under California's Three Strikes law—his 1982 misdemeanor theft offense and his two federal convictions for transportation of marijuana—only in Louisiana is it possible for Andrade to receive a comparable sentence. Even then, the sentence would be vulnerable to a challenge under the Louisiana state constitution.

### a. Rhode Island

In Rhode Island, a three-time felon may be sentenced to an additional 25 years in prison. R.I. Gen. Laws § 12–19–21. Unlike in California, however, theft of merchandise valued at less than $100 is not a felony in Rhode Island, even if the defendant has a prior theft conviction. *Compare id.* § 11–41–20(d) *with* Cal.Penal Code § 666. Each of Andrade's petty theft offenses involved theft of property valued at less than $100 ($84.70 and $68.84, respectively). Consequently, Andrade's petty theft offenses would not be felonies in Rhode Island, and he would not be eligible for the 25–year sentence enhancement. The maximum term of imprisonment he could receive would be one year for each petty theft offense. R.I. Gen. Laws § 11–41–20(d).

The Rhode Island habitual offender sentencing scheme also differs from California's Three Strikes law in that the defendant must serve "two or more" separate terms of imprisonment before he qualifies for habitual offender status. *Id.* § 12–19–21(a). Here, Andrade pled guilty to and was sentenced for his three burglary offenses in a single proceeding.

In addition, although the Rhode Island habitual offender statute requires the sentencing judge to order the defendant to serve a minimum number of years of his sentence before the defendant becomes eligible for parole, the judge's discretion to determine that minimum number of years is not restricted. *Id.* § 12–19–21(c). California's Three Strikes law does not afford any such discretion to judges. The judge must impose a mandatory minimum term without possibility of parole. *Cervera,* 103 Cal.Rptr.2d 762, 16 P.3d at 181.

Therefore, for multiple reasons, Andrade could not receive as severe a sentence in Rhode Island as he did in California.

### b. West Virginia

Andrade could not be sentenced to life in prison under the West Virginia habitual offender statute, W. Va.Code § 61–11–18(c). The West Virginia Supreme Court has held that a life sentence imposed on a non-violent recidivist offender violates the express requirement of proportionality in sentencing mandated by Article III, Section 5 of the West Virginia state constitution. *State v. Deal,* 178 W.Va. 142, 358 S.E.2d 226, 231 (1987) (vacating sentence of non-violent recidivist on grounds that life in prison was disproportionate to offenses); *State v. Hedrick,* 182 W.Va. 701, 391 S.E.2d 614, 622 (1990) (reversing life sentence for burglary where prior felonies were delivery of a controlled substance and breaking and entering). As a non-

violent recidivist, Andrade could not receive a life sentence in West Virginia.

#### c. Texas

In Texas, petty theft is not punishable as a felony unless the defendant has *two* previous theft convictions. Tex. Penal Code Ann. § 31.03(e)(4)(D). Misdemeanor convictions do not trigger Texas's habitual offender law. *Id.* § 12.42. If Andrade's only prior theft offense were his 1990 petty theft conviction (i.e., disregarding his 1982 misdemeanor theft conviction, as the State in its brief and the state courts did), Andrade's present theft offenses would only be misdemeanors in Texas, each punishable by up to six months in jail and up to a $2,000 fine.

Even if both of Andrade's prior theft convictions are counted, his present petty thefts would be considered only "state jail felon[ies]." *Id.* § 31.03(e)(4)(D). Under Texas's habitual offender law, a state jail felony will be punished as a second-degree felony (with up to 20 years in prison) if the defendant has one or more prior felonies. *Id.* §§ 12.42(a)(2) & (3), 12.33. It follows that, in Texas, Andrade could receive up to 40 years in prison if he were sentenced to consecutive terms.

Texas, however, has a generous parole policy. Except for those accused of certain violent crimes, inmates are eligible for parole after serving as little as one-fourth of their sentence (or less, because inmates may apply good-time credit to their time served). Tex. Govt.Code Ann. § 508.145(f). Thus, if Andrade were sentenced to 40 years in Texas, he would be eligible for parole in 10 years (even less, with good-time credit).

#### d. Louisiana

At the time the California courts considered Andrade's appeal, Louisiana was the only state among the four cited by the State where Andrade could receive a sentence comparable to 50 years to life,[22] but only if a Louisiana court considered both Andrade's 1982 misdemeanor theft conviction and his two federal convictions for transporting marijuana in addition to those convictions considered in the calculation of Andrade's sentence under California's Three Strikes law. Even then, such a sentence would be vulnerable to a challenge as impermissibly excessive under the Louisiana state constitution.

Similar to Texas, theft of less than $300 is punishable as a felony under Louisiana law only if a defendant has *two* previous theft convictions. La.Rev.Stat. Ann. § 14:67(B)(3). Misdemeanors will not trigger Louisiana's habitual offender law.[23] *Id.* § 15:529.1.

Louisiana's habitual offender law provides, in relevant part, that a defendant

---

**22.** Louisiana amended its recidivism statute this year, 2001 La. Sess. Law. Serv. 403 (West), and Andrade would no longer be eligible for a comparable sentence. Under the revised statute, the triggering offense must be "a crime of violence, a sex offense, or ... a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more or any other crimes punishable by imprisonment for twelve years or more" in order to count as a third or fourth strike. Because the sentence for theft with two priors in Louisiana is a maximum of two years, La.Rev.Stat. Ann. § 14:67(B)(3), his current crimes would not count as third or fourth strikes. The current crimes could be treated as second strikes, La.Rev.Stat. Ann. § 15:529.1(A)(1)(a), in which case he would receive a maximum of eight years, or twice the maximum sentence for each of the petty thefts with priors.

**23.** Therefore, if we ignored Andrade's 1982 misdemeanor theft conviction, his present petty thefts would be only misdemeanors in Louisiana, each punishable by up to six months in prison and up to a $500 fine. La.Rev.Stat. Ann. § 14:67(B)(3).

convicted of a fourth or subsequent felony be punished with a minimum term of twenty years in prison without the possibility of parole. *Id.* § 15:529.1(A)(1)(c)(i), (G). Andrade's three prior burglary convictions would be treated as a single prior felony because Louisiana courts have consistently interpreted the law to have a sequential requirement for enhanced penalties. *State v. Butler,* 601 So.2d 649, 650 (La.1992); *State v. Corry,* 610 So.2d 142, 147 (La.Ct.App.1992) (applying the sequential requirement to three counts of simple burglary entered on the same day). His two federal convictions for transportation of marijuana, however, would likely count as his second and third felony convictions. La.Rev.Stat. Ann. § 15:529.1(A)(1). Accordingly, under this scenario, Andrade, in Louisiana, could receive two 20–year sentences without parole—40 years if sentenced consecutively. Moreover, if either of his federal transportation of marijuana offenses were punishable under the Louisiana Uniform Controlled Dangerous Substances Law by more than five years, Andrade could receive a sentence of life without the possibility of parole in Louisiana. *Id.* § 15:529.1(A)(1)(c)(ii).

Although it is possible that Andrade could have qualified for a sentence under Louisiana's Habitual Offender Law comparable to the sentence he received under California's Three Strikes law, there is a distinct possibility, unlike in California, that a Louisiana court might have invalidated such a sentence as excessive under its state constitution. A Louisiana court, for example, recently invalidated as excessive a life sentence under the Habitual Offender Law for a defendant convicted of "misappropriating or taking over $500" whose prior crimes were "two thefts under $100, one theft over $100, several counts of issuing worthless checks, check forgery, [and] simple robbery [for stealing a bicycle

after pushing the minor off it]." *State v. Hayes,* 739 So.2d 301, 303–04 (La.Ct.App. 1999); *see also State v. Burns,* 723 So.2d 1013 (La.Ct.App.1998) (invalidating as excessive under the Louisiana state constitution a life sentence for possession and distribution of two rocks of crack cocaine where defendant's prior felonies had been non-violent and there were other mitigating circumstances).

■ The possibility that Andrade might have received a comparable sentence in one other jurisdiction does not render his sentence constitutional under the Eighth Amendment. *Solem,* 463 U.S. at 299–300, 103 S.Ct. 3001 (holding that defendant's sentence violated the Eighth Amendment while acknowledging that defendant could have received the same sentence in one other state, Nevada); *see also Henderson,* 258 F.3d at 713–14 (holding that defendant's sentence violated the Eighth Amendment while acknowledging that defendant could have received the same sentence in Idaho). Indeed, that Andrade could receive a comparable sentence in only one other state—and, even then, only if that state considered prior convictions not necessary for application of California's Three Strikes law—supports our conclusion that Andrade's sentence was grossly disproportionate to his crimes. *Harmelin,* 501 U.S. at 1005, 111 S.Ct. 2680 ("The proper role for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime.").

■ We thus conclude, following the revised three-factor test articulated by Justice Kennedy in *Harmelin,* that: (1) Andrade's punishment of 50 years to life raises an inference of gross disproportionality when compared to his two petty thefts of nine videotapes worth $153.54, even in light of his prior felony and misde-

meanor convictions; (2) Andrade's sentence is substantially more severe than sentences for most violent crimes in California and is unusual even when compared to other applications of California's Three Strikes law; and (3) Andrade could not have received such a severe sentence anywhere else, with the possible exception of Louisiana. Accordingly, we disagree with the California Court of Appeal and conclude that Andrade's sentence is so grossly disproportionate to his crime that it violates the Eighth Amendment to the United States Constitution.

## C. Decision of the California Court of Appeal

Of course, under AEDPA, mere disagreement is not enough. We may grant relief only if the state court's decision is "contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

■■■ Our review of the Supreme Court's decisions in *Rummel* (1980), *Solem* (1983), and *Harmelin* (1991) demonstrates that the law governing the application of the Eighth Amendment to non-violent offenders sentenced to life imprisonment was clearly established by the time of the California Court of Appeal's 1997 decision in this case. *See also Riggs*, 119 S.Ct. at 892 (Stevens, J., memorandum opinion respecting the denial of the petition for a writ of certiorari) (stating that petitioner could assert his claim in a petition for a writ of habeas corpus "since [he] is asking us to apply a settled rule of Eighth Amendment law"). Although we follow the test prescribed by Justice Kennedy in *Harmelin*, both *Rummel* and *Solem* remain good law and are instructive in *Harmelin*'s application.

The state court begins its analysis of Andrade's Eighth Amendment claim by noting that "the current validity of the *Solem* proportionality analysis is questionable in light of *Harmelin*." The remainder of its discussion relies exclusively on *Rummel*. It compares Rummel's three felonies with Andrade's two petty thefts with a prior and his three residential burglaries from 1983. It then concludes, "[c]omparing [Andrade's] crimes and criminal history with that of defendant Rummel, we cannot say the sentence of 50 years to life at issue in this case is disproportionate and constitutes cruel and unusual punishment under the United States Constitution."

Although the state court appears to review for "gross disproportionality," its disregard for *Solem* results in an unreasonable application of clearly established Supreme Court law. Although *Solem*'s three-factor analysis was modified by *Harmelin*, only two justices of the Supreme Court would have held that *Solem* is no longer good law. Indeed, as discussed above, Justice Kennedy contrasted the severity of the defendant's crime in *Harmelin* with the "'relatively minor'" nature of the offenses in *Solem*. *Harmelin*, 501 U.S. at 1002, 111 S.Ct. 2680 (quoting *Solem*, 463 U.S. at 296–97, 103 S.Ct. 3001).

A proper analysis of gross disproportionality requires a comparison to all three cases: *Rummel*, *Solem*, and *Harmelin*. While Andrade's crimes and history are comparable to those of the defendants in both *Rummel* and *Solem*, his life sentence with no possibility of parole for 50 years is most analogous to *Solem*. The state court's failure to address *Solem* yields an unreasonable conclusion that a non-violent recidivist sentenced to such a severe sentence for two misdemeanor offenses does not raise an inference of gross dispropor-

tionality.[24] Its conclusion that Andrade's sentence does not violate the Eighth Amendment is irreconcilable with the Supreme Court's decision in *Solem* and thus constitutes clear error.

## V. CONCLUSION

■ Our decision does not invalidate California's Three Strikes law. Rather, our holding is limited to the application of the Three Strikes law to the unusual circumstances of Andrade's case. Even so, we do not arrive at this conclusion lightly. Sentencing laws "involve[ ] substantive penological judgment that, as a general matter, is 'properly within the province of the legislatures, not courts.'" *Harmelin*, 501 U.S. at 998, 111 S.Ct. 2680 (citing *Rummel*, 445 U.S. at 275–76, 100 S.Ct. 1133). We do not advocate a particular penological theory nor challenge the people of California's " 'independent power . . . to articulate societal norms through criminal law.'" *Id.* at 999, 111 S.Ct. 2680 (citing *McCleskey v. Zant*, 499 U.S. 467, 491, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)). Yet, the Eighth Amendment does not permit the application of a law which results in a sentence grossly disproportionate to the crime. Andrade's sentence of life in prison with no possibility of parole for 50 years is grossly disproportionate to his two misdemeanor thefts of nine videotapes, even when we consider his history of non-violent offenses. The California Court of Appeal's conclusion to the contrary resulted from an unreasonable application of clearly established Supreme Court law.

Accordingly, we REVERSE the judgment of the district court and REMAND with instructions to issue the writ of habeas corpus if, within 60 days following the issuance of our mandate, the state has not resentenced Andrade.

SNEED, Circuit Judge, Concurring in part and Dissenting in part:

I agree with the Majority's conclusion in Part II that Andrade filed the functional equivalent of a timely notice of appeal. I respectfully dissent, however, from the Majority's conclusion in Parts IV and V that Andrade's sentence violates the Eighth Amendment.

The sentence imposed in this case is not one of the "exceedingly rare" terms of imprisonment prohibited by the Eighth Amendment's proscription against cruel and unusual punishment. *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (quoting *Solem v. Helm*, 463 U.S. 277, 289–290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (quoting *Rummel v. Estelle*, 445 U.S. 263, 272, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) ("Outside

---

24. Although the state court ends its analysis of Andrade's Eighth Amendment claim with a comparison to *Rummel*, it evaluates the second and third factors in its discussion of Andrade's "cruel and unusual" claim under the California state constitution. This discussion is arguably irrelevant for our purposes because it did not concern federal law.

Even if we treat it as a discussion of federal law, however, our conclusion that the state court unreasonably applied clearly established Supreme Court law remains unchanged. The state court unreasonably concluded that the "second factor effectively is irrelevant" because "all three strikes defendants are punished in the same manner."

While such defendants are all punished with variations of a life sentence, they have not all committed the same crimes. Andrade's case is unusual even when compared to other three-strikes defendants, and his sentence is extreme when compared to sentences for the State's most violent crimes.

The state court of appeal's discussion of the third factor is equally flawed. It concludes that many states, including Texas, "impose severe punishments on repeat felony offenders," whereas our analysis shows that Andrade could not have received such a severe sentence in any other state, with the possible exception of Louisiana.

the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.")))). Two consecutive sentences of 25 years to life-with parole eligibility only after the minimum 50 years-is obviously severe. Nevertheless, it is the sentence mandated by the citizens of California through the democratic initiative process and, additionally, legislated by their elected representatives. Cal. Pen.Code § 667(e)(2)(A) ("three strikes" provision mandating minimum term of 25 years for recidivist felon); Cal. Pen.Code § 1170.12 (codifying state-wide initiative identical to "three strikes" legislation).

It has long been the law of this Circuit that, "[g]enerally, as long as the sentence imposed on a defendant does not exceed statutory limits, this court will not overturn it on Eighth Amendment grounds." *U.S. v. Parker*, 241 F.3d 1114, 1117 (9th Cir.2001) (citing *United States v. Zavala–Serra*, 853 F.2d 1512, 1518 (9th Cir.1988) (citing *United States v. Washington*, 578 F.2d 256, 258 (9th Cir.1978))). This case presents no opportunity to set aside, or qualify, this long-established and sound precedent.

### I

In reversing Appellant's sentence, the majority purports to rely on the opinion of Justice Kennedy in *Harmelin v. Michigan*, 501 U.S. at 996, 111 S.Ct. 2680 (Kennedy, J., concurring in the judgment). That opinion (joined by two other members of the court) held that the Eighth Amendment "forbids extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001, 111 S.Ct. 2680. While recognizing that the Eighth Amendment includes a "proportionality principle," Justice Kennedy also acknowledged that "its precise contours are unclear." *Id.* at 998, 111 S.Ct. 2680. He attempted to "give content

to the uses and limits of proportionality review" by identifying four principles that inform the Court's application of the Eighth Amendment to lengthy prison terms. *Id.*

Each of the four principles underlying *Harmelin*'s "gross disproportionality" analysis favors the affirmance of Appellant's sentence. The first of these is that "as a general matter [it] is properly within the province of legislatures, not courts" to fix punishments for crimes. *Id.* Thus, "reviewing courts ... should grant substantial deference to the broad authority that legislatures possess in determining the types and limits of punishments for crimes." *Id.*

The sentencing scheme in the instant case was the result of both popular vote (Proposition 184 was approved by 71.84 percent of the electorate) and legislative action. Our deference should be at its apex. We have before us the clearest indication possible that severe, mandatory sentences for recidivist offenders is the expressed penal philosophy of the citizens of California. The initiative process permits the electorate to speak for itself, and its voice should be heard, not ignored.

The second principle underlying proportionality review "is that the Eighth Amendment does not mandate adoption of any one penological theory." *Id.* at 999, 111 S.Ct. 2680. The Eighth Amendment permits states to grant "different weights at different times to the penalogical goals of retribution, deterrence, incapacitation, and rehabilitation." *Id.* All are legitimate goals of sentencing, and the legislature has plenary power to prescribe sentencing accordingly.

Consequently, we must accord great deference to state-mandated sentences. We should not employ our power to strike down a sentence as unduly harsh when its

primary purpose is the incapacitation of an habitual criminal offender. Even were it our collective judgment that the defendant is capable of rehabilitation, that judgment should not trump the voice of the state legislature. California's "three strikes" sentencing regime reflects a judgment that society's interest is best served by imprisonment of repeat felony offenders and a correlative determination that more lenient treatment of such offenders is inappropriate. *People v. Cooper*, 43 Cal.App.4th 815, 824, 51 Cal.Rptr.2d 106 (1996) ("By enacting the three strikes law, the Legislature acknowledged the will of Californians that the goals of retribution, deterrence, and incapacitation be given precedence in determining the appropriate punishment for crimes."). It is true that over time public attitudes change. However, it is not our duty to anticipate the future legislative conduct of the State of California.

The third principle cited by Justice Kennedy is that "marked divergences both in underlying theories of sentencing and the length of prescribed prison terms are the inevitable, [and] often beneficial, result of the federal structure." *Harmelin*, 501 U.S. at 999, 111 S.Ct. 2680. It is not, to repeat, the role of the federal courts to establish the appropriate sentences that each state is obligated to follow in punishing those who violate its laws.

The fourth principle that guides our review of Appellant's sentence is that such review "should be informed by 'objective factors to the maximum possible extent.'" *Id.* at 1000, 111 S.Ct. 2680 (quoting *Rummel*, 445 U.S. at 274–275, 100 S.Ct. 1133). Justice Kennedy noted that objective factors exist to permit review of a sentence of death. *Id.* at 1000, 111 S.Ct. 2680 ("[T]he objective line between capital punishment and imprisonment for a term of years finds frequent mention in our Eighth Amendment jurisprudence."). He observed, however, "that we lack clear objective standards to distinguish between sentences for different terms of years." *Id.* at 1001, 111 S.Ct. 2680. *See also Solem*, 463 U.S. at 294, 103 S.Ct. 3001 ("It is clear that a 25–year sentence generally is more severe than a 15–year sentence, but in most cases it would be difficult to decide that the former violates the Eighth Amendment while the latter does not."); *Rummel*, 445 U.S. at 275, 100 S.Ct. 1133 (the line between death and other punishments is "considerably clearer than would be any constitutional distinction between one term of years and a shorter or longer term of years").

Informed by these four principles, the *Harmelin* court concluded that a sentence of life imprisonment without possibility of parole for possession of cocaine was not cruel and unusual. "A rational basis exists for [the state] to conclude that petitioner's crime is as serious and violent as the crime of felony murder without specific intent to kill, a crime for which no sentence of imprisonment would be disproportionate." *Id.* at 1004, 111 S.Ct. 2680. There is an equally rational basis for the sentence imposed on Appellant in this case:

> The purpose of a recidivist statute such as that involved here is not to simplify the task of prosecutors, judges or juries. Its primary goals are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time.

*Rummel*, 445 U.S. at 284, 100 S.Ct. 1133. The "uses and limits" of proportionality review, as defined in *Harmelin*, demand that we respect this explanation if it is rational. *Harmelin*, 501 U.S. at 998, 111 S.Ct. 2680. With respect to Appellant's sentence, I believe that it is.

The majority, however, has attempted to apply *Harmelin*'s narrow holding—the prohibition on grossly disproportionate sentences—without thoughtful consideration of the principles underlying its holding. The result of this approach is predictable and, in fact, was predicted by two members of the *Harmelin* majority: "the proportionality principle becomes an invitation to imposition of [the] subjective values" of federal judges. *Id.* at 986, 111 S.Ct. 2680 (Scalia, J.).

In short, for all its reliance on *Harmelin*, that case does not compel the outcome reached by the majority today. In fact, just the opposite is true. *Harmelin* counsels that judicial review of legislatively determined sentences should reflect both deference to the elected branches of government and deference to the varied, but rational, determinations of the 50 states. Therefore, we should affirm the sentence in this case.

## II

The principles articulated by Justice Kennedy, restated above, and employed in a manner consistent with their purpose, are sufficient to restrain any federal judicial tendency to employ "cruel and unusual punishment" as a justification for expansive constitutionalization of permissible sentencing by the states. This fact is borne out by numerous cases from our sister circuits. In the wake of *Harmelin*, not a single court has struck down the sentence of an habitual offender on Eighth Amendment grounds.[1]

The Seventh Circuit in *Bocian v. Godinez*, 101 F.3d 465, 472 (7th Cir.1996), in concluding that the accused's sentence was not "contrary to" the gross disproportionality analysis of *Harmelin*, recognized that the *Harmelin* majority emphasized that "state legislatures have great leeway in determining the appropriate punishments for specific crimes." Thus, the state court's refusal to "substitute its judgment or preference as to punishment for that of the sentencing court"—far from being contrary to clearly established federal law—was consistent with the *Harmelin* analysis. *Id.* at 473.

Likewise, in *McGruder v. Puckett*, 954 F.2d 313 (5th Cir.1992), the court affirmed a life sentence without possibility of parole imposed on an habitual offender where the infraction that triggered the life sentence was the offense of auto burglary. Applying the *Harmelin* analysis, as articulated by Justice Kennedy, the court dismissed the defendant's argument that life in prison without possibility of parole was grossly disproportionate to the crime of auto burglary. "We think that the argument ignores the essence of the statute under which he was sentenced.... Under the statute, his sentence is imposed to reflect the seriousness of his most recent offense, not as it stands alone, but in the light of his prior offenses." *McGruder*, 954 F.2d at 316.

These two opinions also reflect what has been, until today, the consensus of the federal courts with regard to the scope of proportionality review under *Harmelin*.[2] These cases underscore the fact that judi-

1. In fact, in the decade since *Harmelin* was decided, only one sentence has been struck down as proscribed by the Eighth Amendment to the U.S. Constitution. That case, *Henderson v. Norris*, 258 F.3d 706 (8th Cir. 2001), involved a first time drug offender, not an habitual offender as is the case here.

2. *See, e.g., United States v. Cardoza*, 129 F.3d 6, 19 (1st Cir.1997) (affirming sentence of 20 years imprisonment for possession of a single bullet when defendant had a prior felony history); *United States v. Prior*, 107 F.3d 654, 659 (8th Cir.1997) (affirming life sentence for drug offender who, though he had three prior

cial deference toward legislative determinations of suitable sentences is particularly appropriate with regard to treatment of recidivist offenders.[3] Adding the role of prosecutorial discretion to the mix of relevant sentencing factors makes the "gross disproportionality" analysis of questionable value when applied to recidivist offenders. *See Rummel,* 445 U.S. at 281, 100 S.Ct. 1133 ("Another variable complicating the calculus is the role of prosecutorial discretion in any recidivist scheme."). In sum, "gross disproportionality," as applied in the recidivism context, requires adherence to the principles underlying the Kennedy opinion.

Bringing all of these factors to bear on the "gross disproportionality" inquiry, no other circuit has overturned a sentence imposed pursuant to a recidivist sentencing statute. Justice Scalia in *Harmelin* had it right. "Disproportionality" is influenced by the prevailing attitude toward the seriousness of particular crimes and the appropriateness of harsh punishments. These judgments can be altered either within years, decades or centuries. "Neither Congress nor any state legislature has ever set out with the objective of crafting a penalty that is disproportionate; yet ... many enacted dispositions seem to be so—because they were made for other times or other places, with different social attitudes, different criminal epidemics, different public fears, and different prevailing

theories of penology." *Harmelin,* 501 U.S. at 985, 111 S.Ct. 2680 (Scalia, J.).

## III

To repeat, our review of state mandated sentences is circumspect and deferential. Nevertheless, *Harmelin* does require us to assess Appellant's sentence for gross disproportionality; this inquiry is limited to an examination of the gravity of the offenses and the harshness of the sentence. While petty theft offenses are admittedly not grave, Appellant's recidivist nature makes his current activity much more serious.

Appellant's criminal history commenced in 1982 with a misdemeanor theft. While on probation for this theft, he burglarized three separate residences in 1983, felonies resulting in Appellant's first and second strikes. In 1990 Appellant was convicted for a second misdemeanor theft. Then in 1995, Appellant was arrested for two separate shoplifting offenses-each elevated to felonies due to his prior theft convictions.

Under California's sentencing scheme, these 1995 shoplifting convictions amounted to Appellant's third and fourth strikes, which yielded two consecutive sentences of twenty-five years to life, totaling fifty years to life.[4] This is not a lenient sentence; however, it is equally clear that the Appellant is a recidivist. His probation report sets forth, in addition to the above

felony drug convictions, had never before served a prison term).

3. Even assuming a court is competent to determine an offender's culpability (on a relative scale) by comparing him to others who have committed the same or more serious crimes, *See Henderson v. Norris,* 258 F.3d 706 (8th Cir.2001), the complexity of this comparison is magnified when the offender in question has a lengthy criminal history. "If nothing else, the three-time offender's conduct supports inferences about his ability to conform with social norms that are quite different from possible inferences about first or

second-time offenders." *Rummel,* 445 U.S. at 282 n. 27, 100 S.Ct. 1133.

4. It should be emphasized that Andrade's sentence is not one fifty-year sentence for thefts totaling $153.54. Appellant, in fact, is facing two consecutive twenty-five year sentences for two separate felony offenses. The Majority's comparison of Andrade's sentence to other "Three Strikes" defendants misses this point. (Majority Opinion 762). Appellant's sentence is "twice as long" as the sentences of these other defendants because he as committed twice the number of offenses. *See People v. Cline,* 60 Cal.App.4th 1327, 71 Cal.Rptr.2d 41

enumerated offenses, two separate federal convictions for transporting marijuana, dismissal of seven state residential burglary charges, and a parole violation for escape from federal prison. The probation report refers to Appellant's acknowledged heroin addiction and that Appellant admits to stealing to support his drug habit. The probation report also states that Appellant is unemployed and does not help care for his three children. Before his most recent conviction, Appellant had been in and out of state or federal prison a total of six times. Under such circumstances, it is rational for a sentencing court to determine that a term of twenty-five years to life is not a grossly disproportionate sentence for each of Appellant's current crimes.

One should neither exaggerate nor minimize Appellant's culpability. His guilt is not in dispute. Nor is the fact of his recidivism, nor the applicability of the three strikes sentencing law. The simple statement of his history of criminal activity is enough to show that the state court's determination of the proper punishment-even if found to be erroneous-was not *clearly* erroneous as this Court has defined it. *See Van Tran v. Lindsey*, 212 F.3d 1143, 1153–54 (9th Cir.2000) ("we hold that under AEDPA we must reverse a state

court's decision as involving an 'unreasonable application' of clearly established federal law . . . when our independent review . . . does not merely allow us ultimately to conclude that the petitioner has the better of two reasonable legal arguments, but rather leaves us with a 'firm conviction' that one answer, the one rejected by the court, was correct and the other, the application of the federal law that the court adopted, was erroneous"). Therefore, to repeat, a "rational basis" exists for the state of California to conclude that the interests of society are best served by Appellant's incarceration for a minimum of fifty years. *Harmelin*, 501 U.S. at 1004, 111 S.Ct. 2680 ("rational basis exists" to justify life in prison without possibility of parole for drug possession offense); *Van Tran v. Lindsey*, 212 F.3d at 1159 ("some erroneous applications may nonetheless be reasonable") (citing *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Defendant's sentence is thus not an unreasonable application of clearly established federal law.

I respectfully concur in part and dissent in part.

(affirming sentence of 25 years to life for theft of clothing); *People v. Goodwin*, 59 Cal. App.4th 1084, 69 Cal.Rptr.2d 576 (affirming sentence of 25 years to life for stealing a pair of pants); *People v. Terry*, 47 Cal.App.4th 329, 54 Cal.Rptr.2d 769 (affirming sentence of 25 years to life for stealing handbag left in open car). *See also Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir.2001) ("in any rate it is wrong to treat stacked sanctions as a single sanction. To do so produces the ridiculous consequence of enabling a prisoner, simply by recidivating, to generate a colorable Eighth Amendment claim."); *Hawkins v. Hargett*, 200 F.3d 1279, 1285 (10th Cir.1999) (finding no Eighth Amendment violation in sentences totaling 100 years when these sentences were

for *combined* separate offenses of rape and robbery); *United States v. Aiello*, 864 F.2d 257, 265 (2d Cir.1988) ("Eighth amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence."); *State v. Four Jugs of Intoxicating Liquor*, 58 Vt. 140, 2 Atl. 586, 593 (1886), quoted in *O'Neil v. State of Vermont*, 144 U.S. 323, 331, 12 S.Ct. 693, 36 L.Ed. 450 (1892) ("It would scarcely be competent for a person to assail the constitutionality of the statute prescribing punishment for burglary on the ground that he had committed so many burglaries that, if punishment for each were inflicted upon him, he might be kept in prison for life.").